MADDOX, Justice
(dissenting).
When this matter was before the Court originally, I concurred in the result of the opinion and wrote the following:
“It is somewhat difficult for me to understand why the Birmingham News Company is not entitled to see what Justice Houston believes it is entitled to see. I was almost persuaded to concur with his special writing, but I concur in the result, which is to remand the case to the trial court: (1) because the trial judge acknowledged that he had ‘not read all of the statements and [had] not look[ed] at all the supporting documents,’ and (2) because I believe that Auburn University should be given another opportunity, if it can, to show why the records should not be disclosed.
“In concurring to remand the case for this purpose, I must point out, however,that I agree with Justice Houston’s position on the applicable law, and specifically with his statement that ‘[his] position in this case is consistent with two recent rulings by appellate courts in Kentucky and Tennessee,’ University of Kentucky v. Courier-Journal & Louisville Times Co., 830 S.W.2d 373 (Ky.1992); Memphis Pub *140 lishing Co. v. Memphis State University, 6 Media L.Rep. (BNA) 2405 (Tenn.App.1980) (not published in S.W.2d).”
Birmingham News Co. v. Muse, 638 So.2d 853, 858 (Ala.1994) (Maddox, J., concurring in the result). I was almost persuaded to dissent before, and after reviewing the order of the trial judge on remand, and after further reviewing the applicable law, I am convinced that The Birmingham News Company (“the News”) was entitled to the entire response of Auburn University to the inquiry of the National Collegiate Athletic Association (“NCAA”); consequently, I must respectfully dissent. I will state here some of the facts of this case that I think will give a better understanding of my reasons for disagreeing with the majority on the applicable law.
On or about November 12, 1992, Dr. William V. Muse, in his capacity as President of Auburn University, received from the NCAA a letter of official inquiry (the “NCAA letter”), which contained formal charges of NCAA rule violations by Auburn University and its employees. The News requested a copy of the NCAA letter, and President Muse refused. The News sued, asking the trial court to order disclosure of the letter,[1] and the trial court, after hearing arguments and reviewing the NCAA letter in camera, found the letter to be a public writing within the meaning of the Alabama Open Records Act, and ordered that the letter be released no later than February 5,1993. On March 8, 1993, Dr. Muse submitted Auburn’s response to the NCAA, and the News then requested a copy of the response. President Muse not only refused to give the News a copy of the response, but would not admit or deny that Auburn had denied the charges made in the NCAA letter.
The News sued again,[2] this time seeking a release of Auburn’s response. This case was assigned to Circuit Judge Robert M. Harper. After an evidentiary hearing, oral argument, and the submission of post-hearing briefs, Judge Harper conducted an in camera inspection of “the AU Response and most of the statements which accompany it,” and entered an order on May 20, 1993, denying the News’s request for a preliminary injunction, but indicated that “[although] [t]here is no legitimate public interest in the immediate disclosure of [the] AU Response when weighed against the public policy considerations militating against same at this time ... [a]t such time as the NCAA Committee on Infractions issues its final ruling with reference to this investigation, this Court will, on petition of either party, set a hearing to determine whether all, or a portion of, the AU Response should be made public.” (Emphasis by trial court.) The News appealed. During the briefing schedule on that appeal, Dr. Muse filed a motion in the trial court on August 19, 1993, that recited the portion of Judge Harper’s May 20 order quoted above, notified the trial court that the NCAA Committee on Infractions had issued its final order on its investigation of Auburn University on August 17,1993, and moved the court to set a hearing to determine whether the News should be given access to Auburn’s response, and, if so, the terms and conditions on which the News should be given access. The trial court ordered that the entire response, together with supporting statements and documents, be disclosed to the News on a time schedule to be ordered by the Alabama Supreme Court. Dr. Muse appealed from this order, and the two appeals were consolidated.[3] On March 18,1994, this Court issued its decision remanding the cause to the trial court for a complete in camera review of the Auburn Response and “individualized determinations as to whether the Response and the supporting materials are due to be disclosed under the standards set out in Stone [v. Consolidated Publishing Co., 404 So.2d 678 (Ala.1981)], Chambers [v. Birmingham News Co., 552 So.2d 854 (Ala.1989)], and this opinion [Birmingham News Co. v. Muse, 638 So.2d 853 (Ala.1994)].”
On remand, the trial court dissolved the permanent injunction, denied the petition of *141 the News for an injunction, and entered the order quoted in the majority opinion, in which the trial judge stated, in part, that “the tenor of the Supreme Court opinion indicates a position leaning in support of Auburn’s argument against disclosure.”
In my opinion, the posture of this ease is now entirely different from what it was in the earlier appeals, because the trial judge has now reviewed the entire Auburn Response, presumably including all of the statements and all of the supporting documents, and has refused to order disclosure. Consequently, there can be little doubt that this appeal presents squarely the question whether the Auburn Response is a public document; I believe that it clearly is, under the definition of a “public document” given in Stone v. Consolidated Publishing Co., 404 So.2d 678, 680 (Ala.1981).
It is apparent from the language of the trial judge’s order that the trial judge was heavily influenced by this Court’s decision, because he wrote that “the tenor of the Supreme Court opinion indicates a position leaning in support of Auburn’s argument against disclosure,” noting that this Court had “quote[d] extensively from Berst v. Chipman, 232 Kan. 180, 653 P.2d 107 (1982), a case in which the Supreme Court of Kansas restricted disclosure of NCAA investigation documents.”
Since the date this case was remanded to the trial court, the same legal issue that is presented in this case was presented in regard to an NCAA investigation of the University of Alabama football program. The University of Alabama also received a letter of inquiry from the NCAA, and the News, as it did here, sought disclosure of the inquiry, which was refused by the president of the University of Alabama. The News sued. Birmingham News Co. v. Sayers, Civil Action CV-95-330, Circuit Court of Tuscaloosa County. The trial judge there conducted a hearing, viewed evidence in camera, and considered this Court’s decision in the earlier appeal of this case. Although Judge Har-wood delayed disclosure, he ordered disclosure after a specific date. Hence, he came to a conclusion different from that reached by the trial judge in this case. In that Tuscaloosa County case, Judge Robert B. Harwood entered an order that read, in part, as follows:
“In conclusion, the Court finds and concludes that Dr. Sayers’ position with regard to resisting immediate disclosure of the documents in question has been based on legitimate and justifiable motives and considerations, there never having been any doubt but that the full text of the Official Inquiry would be disclosed in due course. This is not a case where a public official has attempted to alter or destroy a public record, but rather a case where a public official has deemed it best that disclosure be delayed until full ‘closure’ of a pending proceeding. The undersigned agrees that a delay in disclosure of some duration was justifiable, based on a balancing of all of the interests of the public, but simply disagrees that disclosure should continue to be delayed until a full and final determination and ‘closure’ has come about. Such a final conclusion could be many months down the road. Because the interest of the public in having the University afforded a full and fair opportunity to pursue all leads and avenues of investigation will have been duly served by the date herein ordered for the release of the Official Inquiry, the Court concludes that any delay beyond that date would not be justified.
“Ordered this 16th day of May, 1995.
“s/Robert B. Harwood, Jr.
“Circuit Court Judge”
It is apparent that Judge Harwood was quite aware of what this Court had done in the earlier appeal of this case, but nevertheless required disclosure in the ease before him. In my opinion, Judge Harwood more correctly determined the intent of the Legislature in adopting Alabama’s “Open Records Act,” Ala.Code 1975, § 36-12-40.[4]
*142 Justice Houston, in his dissent on the earlier appeal in this case, wrote:
“I have carefully examined Auburn’s response, which contains, among other things, the statements of a number of individuals taken during the investigation. These statements provide great insight into what eventually became one of the most highly publicized NCAA investigations into alleged improprieties at an Alabama state university. After carefully examining the contents of Auburn’s response, I have concluded that these statements, while containing information that the citizens of this state may find interesting in a general sense, also contain certain information that the citizens of this state need to know and have a right to know. In reaching this conclusion, I recognize Auburn’s concern for the confidentiality of the investigatory process and the effectiveness of future internal investigations by Auburn. I realize that Auburn had no subpoena power to aid it in its attempt to gather information and that it relied heavily on the voluntary cooperation of witnesses. My decision in this case, however, is predicated on the fact that all but two of the statements of confidentiality made by investigators from the NCAA and Auburn during the interviews were general in nature and did not promise confidentiality based upon the specific request of any individual. There is no indication in any of the statements contained in the response, other than the statements of Larry Blake-ney, who was an employee of Troy State University at the time of his interview, and Buddy Mitchell, who at the time of his interview was not an employee of Auburn, that any individual questioned specifically solicited a promise of confidentiality and agreed to talk only after such a promise was made. It would run counter to my understanding of the legislature’s intent in enacting § 36-12-40 for me to hold that a general assurance of confidentiality could nullify the statute.”
638 So.2d at 860-61 (emphasis in original).
Justice Houston, in dissenting on the earlier appeal in this case, clearly stated the law of Alabama that should be applied in this case. He quoted extensively from Chambers v. Birmingham News Co., 552 So.2d 854, 856 (Ala.1989), to show that the documents requested were public records, that Alabama’s Open Records Act was intended for the public’s benefit and was to be liberally construed, that the Stone exceptions to disclosure were to be strictly construed and should not be applied merely because of some perceived necessity on the part of a public official or because it would violate some established office policy, and that the official seeking to prevent disclosure had the burden of proving that the Stone exception applied and that the information sought was not discoverable under this Court’s “rule of reason” test. One of the reasons advanced for nondisclosure is that information was obtained by promises of confidentiality, but the confidentiality exception is to be narrowly construed. As this Court said in Chambers, “The Stone exceptions were not intended, nor shall they be used, as an avenue for public officials to pick and choose what they believe the public should be made aware of.” 552 So.2d at 857.
The NCAA investigations into the football programs at Auburn University and the University of Alabama were of great public interest; both resulted in major sanctions against the two member institutions, and these sanctions became first-page news stories in this State. I believe that Circuit Judge James T. Gullage, in an order issued in this case almost three years ago, correctly observed that football in Alabama in not just a game. He wrote:
“College athletics, at a major institution such as Auburn University, are public matters. The public is encouraged to participate as fans, contributors, sponsors of events or simply as interested citizens. Essentially, there is nothing in our society more public than major college athletics. However, there may be portions of the program which are not public such as parts of the private lives of the participants although private lives may become public in particular circumstances. Participants in college athletics choose to be visible to the public eye. In most instances, if the news is good, athletes, coaches and trainers desire publicity. The fact that information leading to publicity may be adverse to the *143 interest of individuals does not make that information privileged or not releasable.”
I agree with Judge Gullage, and I agree with Judge Harwood, who reached the same conclusion in the case before him. An application of the “rule of reason” in this ease at this time dictates a holding that the News was entitled to disclosure of the information it sought. As Justice Houston said in his dissent in the earlier appeal of this ease, there are statements in these public records that “contain certain information that the citizens of this state need to know and have a right to know.” 638 So.2d at 860.
Based on the foregoing, I must respectfully dissent.
HOUSTON, J., concurs.

. Birmingham News Co. v. Muse, Civil Action CV-92-529, Circuit Court of Lee County.

. Birmingham News Co. v. Muse, Civil Action CV-93-140, Circuit Court of Lee County.

.The News appeal was Case No. 1921325, and the Muse appeal was Case No. 1921937.

. Section 36-12-40 provides in pertinent part:
“Every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute.”