HARDIN COUNTY SCHOOLS,
Appellant,

v.

J. Kyle FOSTER and the News–Enterprise, Appellees.

No. 1999–SC–0333–DG.

Supreme Court of Kentucky.

March 22, 2001.

---

8. *Abney v. United States,* 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977).

9. *Potter v. Eli Lilly and Co.,* Ky., 926 S.W.2d 449, 452 (1996).

David T. Wilson II, Skeeters, Bennett & Wilson, Radcliff, for Appellant.

Kimberly K. Greene, Dinsmore & Shohl, LLP, Louisville, Troy D. Reynolds, Dinsmore & Shohl, Lexington, for Appellees.

WINTERSHEIMER, Justice.

This appeal is from an opinion of the Court of Appeals which reversed and remanded a decision of the circuit court which had held that the information sought by Foster and The NewsEnterprise was exempt from the disclosure requirements of the Kentucky Open Records Act.

The issue in this matter is whether, and to what extent, the Hardin County Schools must provide information from student disciplinary records to a newspaper and a newspaper reporter. The crucial question is whether the requested information would permit identification of individual students.

On July 11, 1996, Foster, a reporter for The News–Enterprise, made an open records request to the Hardin County Schools and the Elizabethtown Independent School System to inspect and have copies of student hearing records that led to disciplinary actions for the school years 1990 to 1996. The initial request acknowledged that the names of students were privileged but asked for the school of origin and the reason for each disciplinary action. The Hardin County School Superintendent denied the request but Foster then submitted a second request, this time asking for "information pertaining to" expulsions, suspensions and other actions including the offense prompting each action and the particular school in which the offense occurred. The Elizabethtown Independent School System complied with the request and provided a statistical compilation for the time period specified. It is not a party to this action. Hardin County agreed to provide copies of board minutes showing a vote for expulsions governing the years in

question, but all other information was redacted.

Foster requested review by the Attorney General pursuant to KRS 61.870 et seq. The Attorney General concluded that the school should provide the records without redacting the school and offense categories which appeared on those records. Hardin County appealed to circuit court which determined that the information was excluded from the Open Records Act pursuant to KRS 61.878(1)(k) and (*l*) which exempts public records or information the disclosure of which is prohibited by federal law or regulation or by the action of the General Assembly. The federal law found to apply is 20 U.S.C. § 1232g, the Family Educational and Privacy Act (FERPA) which provides in part:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or a practice of permitting the release of education records (or personally identifiable information contained therein other than directory information . . .) of students without the written consent of their parents . . . .

Kentucky law provides in KRS 160.705:

> Education records of students in the public educational institutions in this state are deemed confidential and shall not be disclosed, or the contents released, except under the circumstances described in KRS 160.720.

The relevant exception is KRS 160.720(e), which permits release of student records to "individuals or organizations conducting legitimate studies, surveys and data collection in such a manner so as not to permit personal identification of the students or parents."

Acknowledging that the matter involved the legal interpretation of statutory law, the parties entered into an agreed order which provided that there were no genuine issues of material fact and that the circuit court should decide the issue as a matter of law. The circuit judge issued an opinion stating that the information identifying the school in which an expelled or suspended student was attending along with the date of the disciplinary action, would permit identification of the student by reference to the school's directory which includes students' names and dates of attendance. The circuit judge determined that the requested statistical compilation was protected by both federal and state law and exempt from disclosure pursuant to KRS 61.878(1)(k) and (*l*).

On appeal, the Court of Appeals reversed in a 2 to 1 decision, and determined that the statistical compilation does not directly relate to any particular student, implying the data is not an educational record and that there is simply no information which could easily lead to the identity of the students. The majority cited 20 U.S.C. § 1232g(a)(4)(A) that the statutory definition of "educational records" was materials which contained information directly related to a student and from 34 C.F.R. § 99.3 that the definition of "personally identifiable information" was information that makes the student's identity "easily traceable" including name, address and personal characteristics. The majority also reasoned that KRS 160.705 did not apply as long as the newspaper and Foster were conducting legitimate data collection in a manner which does not personally identify students or parents, thereby making the data acceptable under the exception of KRS 160.720(e). This Court accepted discretionary review.

## I. Standard of Review

██ The question for this Court is whether the statistical compilation re-

quested by Foster is an education record or a portion of an education record which contains personally identifiable information within the meaning of either the federal or state statutes. Such a question is a matter of statutory interpretation and consequently a question of law only. The proper standard of review of a question of law does not require the adoption of the decision of the trial court as to the matter of law, but does involve the interpretation of a statute according to its plain meaning and its legislative intent. *See Floyd County Bd. of Ed. v. Ratliff*, Ky., 955 S.W.2d 921 (1997), as well as *Reis v. Campbell County Bd. of Ed.*, Ky., 938 S.W.2d 880 (1996). Moreover, the parties stipulated that there were no genuine issues of material fact and that this matter may be resolved as a matter of law. We believe the argument by Hardin County Schools that the Court of Appeals decided the case on a clearly erroneous basis is without merit.

## II. Exemption Status

■ The requested information is not exempt from disclosure. The Open Records Act, KRS 61.871, states in pertinent part:

> ... [T]hat the basic policy ... is that free and open examination of public records is in the public interest and the exceptions provided for by KRS 61.878 or otherwise provided by law shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others.

■ The public agency that is the subject of an Open Records request, has the burden of proving that the document sought fits within an exception to the Open Records Act. KRS 61.882(3) and *University of Kentucky v. Courier Journal*, Ky., 830 S.W.2d 373 (1992). The statute demonstrates a general bias favoring disclo-

sure. *See Kentucky Board of Examiners of Psychologists v. Courier–Journal*, Ky., 826 S.W.2d 324 (1992). The Court of Appeals correctly held that the Hardin County School System had not sustained its burden.

KRS 61.878(2) provides that "no exemption in this section shall be construed to prohibit disclosure of statistical information not descriptive of any readily identifiable person." Here, the statistical compilation sought by Foster does not identify individual students and therefore is not descriptive of any readily identifiable person contemplated by the statute. The statistical compilation of disciplinary actions is not an educational record within the meaning of FERPA.

20 U.S.C. § 1232g(b)(1) states in pertinent part that:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information, as defined in paragraph [5] of subsection [a] of this section) of students without the written consent of their parents to any individual, agency or organization....

An educational record is defined in the FERPA as "those records, files, documents and other materials which contain information directly related to a student and are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A). The statistical information requested by Foster does not contain any information which directly relates to a particular student and thus is not an educational record within the meaning of the federal statute. As noted by the Court of Appeals, the information sought by Foster

and the newspaper does not identify the names of any student nor reveal personal characteristics. The identity of the school, year of occurrence, reason for the disciplinary action and the type of action does not directly relate to any particular student. Personally identifiable information would include information that makes the identity of the student easily traceable, such as a name, address or personal characteristics. *See* 34 C.F.R. § 99.3. It is only in a case where the requested records pertain to a single student that courts have held that a record contained personal identifiable information. Such is not the case here because Foster and the newspaper requested a statistical compilation, not individual records.

It is not necessary for this Court to dwell on the important public policy question that disciplinary statistics should be disclosed. The public in general, the residents of the community, and most certainly the parents of children attending a particular school system have a strong interest in the conduct of disciplinary procedures in their school. The potential and reality of violence in our school system is brought sharply to our attention by the tragedy in Heath. Discipline, order and respect for legitimate authority is essential in the school system. Clearly, in today's changing society, a vital piece of information for parents and students is the school policy regarding disciplinary measures. The General Assembly has established a public policy that provides that every student should have access to a safe, secure and orderly school that is conducive to learning. KRS 158.440. To the extent that local school districts must collect and analyze data to provide for school safety and discipline the disclosure of the information sought in this open records request is proper.

Therefore, the Hardin County Schools are required to release the records of the student disciplinary hearings without redacting the particular school and offense that appear on those records. It should be understood that Hardin County Schools must redact all information that would reveal any personal characteristics of the student, including name or age, or information that would reasonably lead to identification of the student.

The decision of the Court of Appeals is affirmed.

LAMBERT, C.J., GRAVES, JOHNSTONE, STUMBO and WINTERSHEIMER, JJ., concur.

COOPER and KELLER, JJ., dissent by separate opinions.

COOPER, Justice, dissenting.

This case involves a balancing of the public's "right to know" against society's interest in shielding the records of a child's juvenile misdeeds from public scrutiny. Appellee Foster wants to know the date and nature of every disciplinary action administered against a student by the Board of Education and the nature of the offense for which the action was taken. The majority opinion orders the public release of this information, essentially grounding its decision on the policy statement set forth in KRS 61.871:

The General Assembly finds and declares that the basic policy of KRS 61.870 to 61.884 [Open Records Act] is that free and open examination of public records is in the public interest and the exceptions provided for by KRS 61.878 *or otherwise provided by law* shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others. (Emphasis added.)

One exception "otherwise provided by law" is that all juvenile offender records be sealed.

All law enforcement and court records regarding children who have not reached their eighteenth birthday shall not be opened to scrutiny by the public, . . .

KRS 610.320(2). The statute contains exceptions, but none pertinent to our inquiry. Certainly, there is no exception for release of juvenile records to the press for general publication.

Another exception "otherwise provided by law" is KRS 160.720(2):

Educational institutions shall not permit the release or disclosure of records, reports, or *identifiable information* on students to third parties *other than directory information as defined in KRS 160.700*, without parental or eligible student consent . . . . (Emphasis added.)

Like KRS 610.320(2), the statute contains exceptions, specifically KRS 160.720(2)(e), which creates an exception for:

Individuals or organizations conducting legitimate studies, surveys, and data collection in such a manner so as *not to permit personal identification* of the students or parents. (Emphasis added.)

KRS 160.725(1) permits public access to "directory information," defined in KRS 160.700(1) as, *inter alia*, "the student's name, address, telephone listing, date and place of birth, . . . dates of attendance . . . ."

KRS 61.878(1)(k) [formerly KRS 61.878(1)(j) ] specifically excludes from the Open Records Act "[a]ll public records or information the disclosure of which is prohibited by federal law or regulation." The Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g(b)(1), the federal counterpart to KRS 160.720(2), provides:

No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (*or personally identifiable information contained therein other than directory information* . . .) of students without the written consent of their parents . . . . (Emphasis added.)

"Personally identifiable information" is defined as (a) the student's name (b) the name of the student's parent or other family member; (c) the address of the student or student's family; (d) a personal identifier, such as the student's social security number or student number; (e) a list of personal characteristics that would make the student's identity easily traceable; or (f) *other information that would make the student's identity easily traceable.* 34 C.F.R. § 99.3 (emphasis added).

The issue boils down to whether the information sought by Foster, coupled with directory information regarding dates of attendance, would make "easily traceable" the identity of a student subjected to school disciplinary action, often for conduct which did or could subject that same student to juvenile court proceedings. The answer, of course, is "yes." It would not require a professional sleuth to identify an expelled student by comparing the date of expulsion provided in the information sought by Foster with the dates of attendance contained in the directory information. If a particular student's attendance terminated on the date that a student was expelled, it would be readily apparent that the student whose attendance terminated was the same student who was expelled. While it might be more difficult to trace an expelled student's identity in a school with a large student body, today's ruling applies to all Hardin County schools, regardless of size.

The statutes and regulations quoted above reflect a policy and intent to shield the misdeeds of school students from public scrutiny much the same as our criminal statutes shield the records of juvenile offenders. Today's decision directly contravenes that policy and intent; accordingly, I dissent.

KELLER, Justice, dissenting.

My decision in this case hinges upon the answer to what appears to be a simple question: would disclosure of the statistical student discipline information sought by Foster and The News Enterprise make the identities of disciplined students "easily traceable"?[1] If the answer to this question is "yes," I believe the Family Educational and Privacy Act (FERPA) prohibits the Hardin County Schools from disclosing educational records which contain such "personally identifiable information." If, however, the answer to this question is "no," I believe no law prohibits the disclosure of such information and this Court should allow Foster and The News Enterprise to obtain the information under Kentucky's Open Records Act.[2]

Although I reduce the salient issue in this case to a narrow question, I dissent from the majority opinion because I believe that question is largely a question of fact, and I can find no evidentiary record upon which this Court can attempt to review the trial court's decision. While the determination of whether certain information is an "educational record" as defined under FERPA involves statutory interpretation, I believe the inquiry in this case, whether disclosure of a statistical compilation of student discipline data *"would*

make the student's identity easily traceable,"[3] requires this Court not to interpret a definition, but to engage in an inherently factual inquiry into the probable results of disclosure. This Court has recognized that determinations which require evaluations of degree are questions of fact despite their interpretive components:

> *Deciding whether the evidence presented proves misconduct "severe or pervasive" is not a question of law but a question of fact,* albeit a question of ultimate fact. *It is similar in nature to whether damages are excessive, whether negligence is gross,* and to other complex issues with an interpretive component such as whether the design of a product is defective or professional negligence has occurred....
>
> ... [T]he employer then argues that the issue whether "sexual harassment is severe or persuasive should be reviewed *de novo* " because it is "dependent upon a mix of fact and law[.]" We agree that deciding whether evidence of sexual harassment rises to the level of "severe or pervasive" contains an interpretive component. But we do not agree that this means we should substitute our judgment on the issue for that of the jury and the trial judge. *The interpretive component does not change basis character from a question of fact to a question of law.*[4]

To determine whether the disclosure of this information will make student identities "easily traceable," we must engage in a similar analysis. Other courts have recognized the factual nature of this very

1.  34 CFR § 99.3(f).

2.  KRS 61.870 -.884.

3.  *See supra* note 1.

4.  *Meyers v. Chapman Printing Co., Inc.,* Ky., 840 S.W.2d 814, 822 (1992) (emphasis added and citations omitted). *See also Horton v. Union Light, Heat & Power Co.,* Ky., 690 S.W.2d 382, 385 (1985).

inquiry.[5]

I find myself troubled by the fact that three levels of the Court of Justice have now reached conclusions about whether the disclosure of certain information would allow others to "easily trace" that information to student identities, but not one judge has ever laid eyes on this statistical compilation. As this statistical information has not yet been compiled for court inspection, the opinions expressed by the courts below and those expressed today by the other members of this Court, require conjecture about the nature of this data. Although this case involves a tangible request for a specific statistical compilation, the conclusions reached in these opinions resolve the question presented by reference to "ifs"—i .e., "if the statistics compiled data from a large student body which affords a degree of anonymity ..." or "if they compiled data from a small elementary school with low student turnover ...." Although my colleagues conclude correctly that our inquiry is situation-specific, I must decline the invitation to "imagine" a factual record which defines the situation before us on the basis of our own assumptions about the Hardin County school system and I cannot rely upon the factual conclusions which follow from these questionable assumptions. The only conclusion I feel comfortable reaching in this case is that release of this statistical compilation *might* make student identities easily traceable. I see no basis for this Court, or any court, to express a definitive opinion as to whether this information will actually make student identities easily traceable when that information exists, much like Schrödinger's infamous cat,[6] only as hypotheticals and probabilities.

I believe we must remand this case to the trial court with instructions for it to order the appellant school system to prepare the statistical information requested by the appellees and deliver it to the trial court for an *in camera* inspection and determination of whether this actual information makes students' identities easily traceable. As the appellants contend that

---

**5.** *See, e.g., Fish v. Dallas Independent School District,* 31 S.W.3d 678, 682-683 (Tex.App., 2000) (noting that its ability to adjudicate the trial court's denial of the plaintiffs' motion for summary judgment because the court was "not privy to the information contained in the school records" and finding that the trial court properly denied summary judgment to both parties because the evidence "did not conclusively show that the confidentiality of the students would not be compromised by the disclosure of the information as requested." *Id.*); *Doe v. Knox County Board of Education,* 918 F.Supp. 181, 184 (E.D.Ky.1996):

Thus, *the question becomes whether the information disclosed in the due process hearing and reported by the Mountain Advocate was personally identifiable.* The defendants argue that the information was not identifiable and that one who did not already know this student would not have learned the student based on the information in the newspaper article. The defendants may be correct, *but that is an issue of fact* that the jury must decide at trial.

*Id.*

**6.** Erwin Schrödinger (1887–1961), a Viennese physicist instrumental in the early development of quantum mechanics, posed what has become known as the Schrödinger Cat Paradox. In this thought experiment, Schrödinger placed a cat inside of a box which contained an apparatus which would kill the cat fifty percent (50%) of the time and then, without opening the box, he pondered whether the cat was alive or dead. Schrödinger's proposed that, until he actually opened the box, the cat was neither alive nor dead, but rather existed in "wave form" and in both states, alive and dead, simultaneously. E. Schrödinger, "Die Gegenwartige Suitation in der Quantenmechanik [The Present Situation in Quantum Mechanics]" 23 Naturwissenschaftern 807, 807–812, 823, 844–849 (1935) (English translation by John D. Trimmer, 124 Proceedings of the American Philosophical Society 323–38 (1980)).

the statistical disciplinary information makes student identities easily traceable because it can be "decoded" by examining accessible student enrollment and directory information, the trial court, or the parties, may request that such additional information be provided to assist the trial court's factual determination and any subsequent appellate review. After the trial court reaches a conclusion, it should seal the statistical information within the record to provide the appellate courts with an evidentiary basis upon which to review the trial court's ruling.

I recognize that, at the trial court level, without stipulating to the material facts, the parties entered into an agreed order stating that "there are no genuine issues of material fact." Exactly how they reached this conclusion remains a mystery to me, as the *only* disagreement in this case concerns a fact question. In any event, this Court is not required to engage in make-believe and attempt to resolve this case solely as a question of law because the parties mistook the nature of the issue at the trial court level. While the parties to a case usually may settle the case upon any basis they desire, they cannot, by agreement, bind this Court, or any court, to resolve the issues in a case under a legally impossible standard. I cannot imagine that this Court would allow the litigants before it to stipulate that a given case be decided by a "best-of-three" match of rock-paper-scissors in the Chambers of the Supreme Court. In my opinion, for this Court to attempt to resolve this matter solely as a legal issue would be every bit as absurd.