Opinion by JUDGE WELLING
*822 ¶ 1 Plaintiff, Steven A. Miller, was involved in an automobile accident with defendants, Stephanie P. Aragon and Rebecca R. Hancock. Miller sued Aragon and Hancock to recover economic and noneconomic damages that he suffered as a result of that accident, but the jury awarded him only economic damages. Prior to trial, both Aragon and Hancock made statutory offers of settlement to Miller pursuant to section 13-17-202, C.R.S. 2017.
¶ 2 Among the issues raised on appeal is an issue of first impression-namely, whether the 2008 amendment to section 13-17-202(1)(a)(II) requires a trial court to always include a plaintiff's actual costs incurred prior to a statutory offer of settlement in the plaintiff's final judgment when determining whether that final judgment exceeds the defendant's statutory offer of settlement. Although we conclude that the answer to that question is "no," we conclude that the language of the offers at issue did require the court to do so. For that reason and others explained below, we reverse the trial court's award of costs, in part, and remand the case for further proceedings.
I. Background
¶ 3 The car accident in this case occurred when Hancock rear-ended Miller, after which Aragon rear-ended Hancock, causing Hancock to once again rear-end Miller. Miller sued Aragon and Hancock seeking economic damages for past and future medical expenses and noneconomic damages for pain and suffering and physical impairment. Before trial, both defendants made settlement offers to Miller. Hancock made an initial settlement offer of $7000 and a second settlement offer of $12,000. Aragon made one settlement offer of $6000. All three offers were made in accordance with section 13-17-202. Miller did not accept any of the settlement offers, and the case proceeded to trial.
¶ 4 The scope, extent, and cause of Miller's injuries were hotly contested at trial. During trial Miller sought $107,744 in economic damages for past and future medical expenses and an unspecified sum in noneconomic damages for his pain and suffering and physical impairment.
¶ 5 Following a four-day trial, a jury awarded Miller $8024 in economic damages, but no noneconomic damages. The jury concluded that Aragon and Hancock were each negligent in equal proportion for the accident, and so each was liable to Miller for 50% of the total damages award.
¶ 6 Following trial, Miller filed a motion for new trial on damages. He argued that the jury's failure to award noneconomic damages was inconsistent with its award of economic damages because the latter necessarily compensated him for treatment and alleviation of pain, and therefore his entitlement to noneconomic damages-to compensate for pain and suffering-had necessarily also been proved. The trial court denied Miller's motion for a new trial.
¶ 7 Each of the parties also moved to recover their costs. Miller sought to recover his costs as the prevailing party pursuant to section 13-16-104, C.R.S. 2017. Aragon and Hancock each sought to recover their post-offer costs pursuant to section 13-17-202, arguing that the final judgment Miller recovered did not exceed their respective pretrial settlement offers.
¶ 8 The trial court treated Miller's cost request differently with respect to each defendant. Miller requested a total of $29,699.52 in costs against both defendants. The court did not award Miller any costs against Hancock because it concluded that, pursuant to section 13-17-202, the final judgment she owed was less than her previous offers of settlement. Pursuant to the same statute, the trial court awarded Hancock the entire amount of her claimed costs that accrued after her first offer. The court awarded costs in favor of Miller and against Aragon, but it reduced the amount to $2067. Aragon's request for costs was denied.
*823 II. Analysis
¶ 9 Miller raises three arguments on appeal. First, he argues that a jury's failure to award noneconomic damages is impermissible as a matter of law when the jury returns a verdict awarding economic damages. Second, he argues that the trial court should have included his pre-offer costs when determining whether Hancock's pretrial offers of settlement exceeded the amount Miller recovered from Hancock at trial. Third, he argues that the trial court erroneously reduced the costs he was entitled to recover, yet awarded Hancock the entire amount of her claimed costs without subjecting her costs to similar scrutiny.
¶ 10 We conclude that the trial court properly denied Miller's motion for a new trial. But we reverse as to the second and third issues. We conclude that the trial court improperly excluded Miller's pre-offer costs from its calculation of his final judgment for purposes of comparing his judgment to Hancock's statutory offers of settlement made pursuant to 13-17-202. We also conclude that the trial court abused its discretion when it sharply reduced the amount of Miller's recoverable costs without making adequate findings as to whether those costs were reasonable and necessary. Accordingly, we remand to the trial court for further proceedings to determine the amount of costs Miller is entitled to recover, and whether, after redetermining Miller's costs, either of Hancock's statutory offers of settlement exceeded Miller's final judgment inclusive of pre-offer costs and interest.
A. The Trial Court Did Not Err by Denying Miller's Motion for a New Trial on Damages
¶ 11 Miller first contends that the trial court erred by denying his motion for a new trial on damages. Miller argues that the jury's failure to award noneconomic damages was impermissible as a matter of law because it was undisputed at trial that his injuries from the car accident were more than "de minimis," thus distinguishing this case from Lee's Mobile Wash v. Campbell , 853 P.2d 1140 (Colo. 1993), and Steele v. Law , 78 P.3d 1124 (Colo. App. 2003), on which the trial court relied to deny his motion. We discern no error in the trial court's denial of Miller's motion for a new trial.
¶ 12 Whether to grant a new trial for inadequate damages is within the sound discretion of the trial court, and we will not disturb its ruling absent a showing of an abuse of that discretion. Steele , 78 P.3d at 1127. The standard governing motions for a new trial based on an alleged inadequacy of damages is "whether it can be said with certainty that the verdict is grossly and manifestly inadequate or so small as to indicate clearly and definitely that the jury neglected to consider the evidence" or was otherwise improperly influenced. Peterson v. Tadolini , 97 P.3d 359, 361 (Colo. App. 2004) (citing Steele , 78 P.3d 1124 ).
¶ 13 The trial court fairly relied on Lee's Mobile Wash and Steele to deny Miller's motion. Lee's Mobile Wash and Steele each affirmed the denial of a motion for a new trial on damages, concluding in each instance that the jury reasonably could have found that any pain and suffering or impairment the plaintiff suffered as a result of the defendant's culpable conduct was de minimis. See Lee's Mobile Wash , 853 P.2d at 1144 ; Steele , 78 P.3d at 1127. Because we reject Miller's contention that an award of economic damages must be accompanied by an award of noneconomic damages, the dispositive issue here is whether Lee's Mobile Wash and Steele are distinguishable. This issue, in turn, boils down to whether the jury at Miller's trial could have reasonably concluded that his injuries from the accident were de minimis. Miller argues that the jury could not have because, he contends, it was undisputed at trial that he suffered actual injury from the accident, and because defendants' expert "conceded" that his injuries were not de minimis. We are not persuaded by Miller's argument. Nor are we persuaded that Lee's Mobile Wash and Steele are distinguishable.
¶ 14 First, we are not required to conclude that Miller is entitled to noneconomic damages even if we accept his contention that there was no dispute at trial over whether he suffered actual injuries from the car accident. Actual injury-severe enough to *824 require medical treatment-and de minimis injury are not mutually exclusive concepts under the rationale of Lee's Mobile Wash and Steele . See Lee's Mobile Wash , 853 P.2d at 1144 (concluding that the jury could have reasonably found the plaintiff's injury to be de minimis, even though the plaintiff's injuries required medical treatment); Steele , 78 P.3d at 1127 (same). The supreme court in Lee's MobileWash held that it is incorrect to assume, as Miller urges here, that "once physical injury and causation are proved, noneconomic damages are proven as well and must be compensated." 853 P.2d at 1144. An award of noneconomic damages is not required by the fact of actual injury. Id.
¶ 15 Nor does the duration of Miller's medical treatment distinguish this case from Lee's Mobile Wash and Steele . Miller cites testimony from defendants' expert, Dr. Joel Carmichael, confirming that Miller received two and a half months of treatment for symptoms related to the injury he sustained in the car accident. Miller's argument seems to be that his injury cannot be de minimis because his symptoms persisted for longer than the plaintiff's injuries in either Lee's Mobile Wash or Gonzales v. Windlan , 2014 COA 176, ¶ 40, 411 P.3d 878. But Miller cites no legal authority for the proposition that an injury's severity is assessed by the duration of the symptoms. To the contrary, the division in Steele upheld a jury verdict awarding no noneconomic damages where the plaintiff "suffered only very minor injuries from a low impact collision ... that were resolved within a year ." 78 P.3d at 1127 (emphasis added).
¶ 16 Second, Miller's characterizations of the relevant facts and evidence in this case have thin-if any-support in the record. For example, Miller contends that Dr. Carmichael "only contested the extent of [Miller's] injuries and did not dispute the fact that [Miller] suffered actual injuries as a result of the collision." In his amended opening brief, Miller supports this contention with nothing more than a citation to his own motion for a new trial-which itself lacks any direct citation to the record. When Miller reiterates this claim in his reply brief, he does so without any citation to the record.
¶ 17 Miller also does not explain why the dispute at trial over "the extent of" his injuries could not have provided a basis for the jury to reasonably conclude that his injuries were de minimis. Indeed, the supreme court in Lee's Mobile Wash relied on the fact that "[t]he extent and nature of [plaintiff]'s brain injury... were hotly disputed at trial" to conclude that the jury reasonably could have determined that the plaintiff's injuries from the accident were only de minimis. 853 P.2d at 1144 (emphasis added).
¶ 18 Furthermore, Miller's claim that defendants' expert "conceded that [his] injuries were not de minimis" is without record support and seemingly inaccurate. Miller cites to an "admission" by Dr. Carmichael. In the testimony Miller characterizes as a purported "admission," however, Dr. Carmichael simply repeated what Miller said to him at a pretrial consultation. Thus, Miller not only mischaracterizes the record, but also fails to point to any undisputed evidence that his injuries from the accident were more than de minimis.
¶ 19 Moreover, not unlike the jury in Lee's Mobile Wash , this jury considered evidence that Miller experienced-and was treated for-a neck injury that predated the car accident, and evidence of a subsequent incident, unrelated to the car accident, that caused an injury to his neck that required treatment. Where a party challenges the adequacy of a jury's verdict on damages, we have a "duty ... to reconcile the [jury's] verdict with the evidence if at all possible." Id. at 1143. Here, the verdict and the evidence are not difficult to reconcile. The defense presented evidence at trial that Miller's symptoms were attributable to pre-existing or subsequent neck injuries, and also evidence that Miller's symptoms did not become evident until sometime after the car accident. Given this evidence, the jury here could have reasonably determined that the accident caused no more than de minimis injury to Miller. Thus, as in Lee's Mobile Wash and Steele , the record here is sufficient to support the jury's award of zero noneconomic damages. Id. at 1144-45 ; see also Steele , 78 P.3d at 1127. Accordingly, we affirm the trial *825 court's denial of Miller's motion for a new trial on damages.
B. The Trial Court Erred by Not Considering Miller's Pre-Offer Costs When Awarding Hancock Costs Pursuant to Section 13-17-202
¶ 20 Following trial, Aragon and Hancock each moved for an award of their post-settlement offer costs pursuant to section 13-17-202, arguing that their respective offers exceeded Miller's final judgment. In response to Aragon's and Hancock's motions, Miller argued that his pre-offer costs should be included in the calculation of his final judgment when the trial court determined whether his final judgment exceeded the respective offers.[1]
¶ 21 The trial court, however, separately analyzed Aragon's and Hancock's offers. With respect to Aragon's offer, the trial court concluded that because the offer included the language "including all ... costs," Miller's pre-offer costs should be included in the final judgment for comparison purposes, and that when such costs were included, Miller's final judgment exceeded Aragon's statutory offer of settlement. Accordingly, the trial court denied Aragon's motion for costs pursuant to section 13-17-202.[2]
¶ 22 The trial court analyzed Hancock's offers differently. The trial court concluded that because Hancock's offers did not "contain[ ] or mention[ ] the word 'costs,' " Miller's final judgment for comparison purposes must also exclude his pre-offer costs. Based on this framing, the trial court concluded that both of Hancock's offers exceeded Miller's judgment against her.
¶ 23 With respect to the cost award in favor of Hancock pursuant to section 13-17-202, Miller contends that the trial court erroneously excluded his pre-offer costs when it calculated his final judgment for purposes of section 13-17-202. Miller makes two arguments in this regard. First, he argues that the statute, as amended in 2008, requires inclusion of these costs when determining if the final judgment amount exceeded the amount a defendant offered in a statutory offer of settlement. In the alternative, Miller argues that regardless of how we interpret the 2008 amendment to section 13-17-202(1)(a)(II), based on the broad language of Hancock's settlement offers, the trial court should have included Miller's pre-offer costs for comparison purposes. We disagree with the first proposition, but agree with the second.
1. Section 13-17-202(1)(a)(II) Does Not Require that Pre-Offer Costs be Included in the Final Judgment When Compared to a Statutory Settlement Offer
¶ 24 Statutory interpretation involves legal questions, which we review de novo. Smith v. Exec. Custom Homes, Inc. , 230 P.3d 1186, 1189 (Colo. 2010). In interpreting a statute, our primary goals are to discern and give effect to the General Assembly's intent. Krol v. CF & I Steel , 2013 COA 32, ¶ 15, 307 P.3d 1116. We look first to the statutory language, giving the words and phrases used therein their plain and ordinary meanings. Id. After doing this, if we determine that the statute is not ambiguous, we enforce it as written and do not resort to other rules of statutory construction. Id. "But if the statutory language is susceptible of more than one reasonable interpretation, it is ambiguous and we may apply other rules of statutory interpretation." People v. Diaz , 2015 CO 28, ¶ 13, 347 P.3d 621 (citing Vensor v.People , 151 P.3d 1274, 1277 (Colo. 2007) ). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Id. (quoting Robinson v. Shell Oil Co. , 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ). With these concepts in mind, we turn to the statutory provision at issue.
*826 ¶ 25 Section 13-17-202(1)(a)(II) provides as follows:
If the defendant serves an offer of settlement in writing at any time more than fourteen days before the commencement of the trial that is rejected by the plaintiff, and the plaintiff does not recover a final judgment in excess of the amount offered, then the defendant shall be awarded actual costs accruing after the offer of settlement to be paid by the plaintiff. However, as provided in section 13-16-104, if the plaintiff is the prevailing party in the action, the plaintiff's final judgment shall include the amount of the plaintiff's actual costs that accrued prior to the offer of settlement.
(Emphasis added.) The General Assembly added the italicized portion of the statute in 2008, effective July 1st of that year. Ch. 5, secs. 1-2, § 13-17-202(1)(a)(II), 2008 Colo. Sess. Laws 8 (amendment applies to offers made on or after July 1, 2008).[3]
¶ 26 The parties offer two competing interpretations of the 2008 amendatory language. Miller argues that it could mean that in calculating a prevailing plaintiff's judgment for comparison purposes, a trial court must include a plaintiff's pre-offer costs, regardless of the language used by the defendant in his or her offer of settlement. See Catlin v. Tormey Bewley Corp. , 219 P.3d 407, 414 n.1 (Colo. App. 2009) (articulating this interpretation of the 2008 amendment in dicta). But Hancock argues that the language could simply provide that once a trial court determines whether a prevailing plaintiff's judgment exceeds the defendant's offer of settlement, a prevailing plaintiff is still entitled to recover his or her pre-offer costs, even if his or her judgment was less than the defendant's offer of settlement. That would be at odds with the division's interpretation of the pre-amendment version of the statute in Bennett v. Hickman , 992 P.2d 670 (Colo. App. 1999). See Novak v. Craven , 195 P.3d 1115, 1122 (Colo. App. 2008) (favoring this interpretation of the 2008 amendment in dicta).
¶ 27 Both interpretations of the 2008 amendment are plausible readings of the amendatory language. On the one hand, the new language references a "plaintiff's final judgment," which is, after all, what the defendant's offer is being compared to when determining whether a defendant is entitled to recover his or her post-offer costs. This interpretation accords "final judgment" the same meaning in both portions of the same subsection. See People v. Dist. Court , 713 P.2d 918, 921 (Colo. 1986) ("Where possible, [a] statute should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts."). On the other hand, the new language is set off by the word "[h]owever," indicating that the operation of awarding a prevailing plaintiff his or her pre-offer costs is performed after the court first determines whether the plaintiff's judgment exceeds the defendant's offer. This interpretation avoids rendering the term "[h]owever" superfluous. Goodman v. Heritage Builders, Inc. , 2017 CO 13, ¶ 7, 390 P.3d 398 (courts should "reject interpretations that render words or phrases superfluous" (quoting People v. Cross , 127 P.3d 71, 73 (Colo. 2006) )). Both interpretations are reasonable. Accordingly, we conclude that the statute is ambiguous. See Lewis v. Taylor , 2016 CO 48, ¶ 20, 375 P.3d 1205 (If "the statutory language has more than one reasonable meaning" it is ambiguous.).
¶ 28 When statutory language is ambiguous, "we consider the statute's legislative history, the state of the law prior to its enactment, the problem addressed, and the statutory remedy." Lombard v. Colo. Outdoor Educ. Ctr., Inc. , 187 P.3d 565, 570 (Colo. 2008) (citing People v. Davis , 794 P.2d 159, 180 (Colo. 1990) ); see also Bostelman v. People , 162 P.3d 686, 690 (Colo. 2007) (If statutory language is ambiguous, "we may consider other aids to statutory construction, such as the consequences of a given construction, the end to be achieved by the statute, and legislative history.").
¶ 29 The legislative history of House Bill 08-1020 provides considerable insight into the problem that the legislature was addressing with the 2008 amendment. The only statutory change enacted by House Bill 08-1020 was *827 the addition of the italicized language discussed above. And the only case that was specifically discussed during the legislative debate over House Bill 08-1020 was Bennett . See Hearings on H.B. 08-1020 before the H. Judiciary Comm., 66th Gen. Assemb., 1st Sess. (Jan. 16, 2008) (remarks of the bill's sponsor, Representative Alice Madden); Hearings on H.B. 08-1020 before the S. Judiciary Comm., 66th Gen. Assemb., 1st Sess. (Jan. 28, 2008) (remarks of the bill's sponsor, Senator Jennifer Veiga).
¶ 30 In Bennett , a division of this court held that section 13-17-202(1)(a)(II), C.R.S. 1998, not only entitled a defendant who made an offer in excess of a plaintiff's recovery at trial to recover his or her post-offer costs, but also barred an otherwise prevailing plaintiff from recovering his or her pre-offer costs pursuant section 13-16-104.[4] Bennett , 992 P.2d at 672-73. It was this perceived "inequity" that the legislation was aimed at "correcting." Hearings on H.B. 08-1020 before the S. Judiciary Comm., 66th Gen. Assemb., 1st Sess. (Jan. 28, 2008) (remarks of Senator Veiga). Notably, the General Assembly's deliberations did not include any discussion of whether or how the amendment would affect the comparison of a final judgment to a statutory settlement offer. See generally Hearings on H.B. 08-1020 before the H. Judiciary Comm., 66th Gen. Assemb., 1st Sess. (Jan. 16, 2008); Hearings on H.B. 08-1020 before the S. Judiciary Comm., 66th Gen. Assemb., 1st Sess. (Jan. 28, 2008). Indeed, as recognized by another division of this court, "the testimony before the House and Senate Judiciary Committees of the General Assembly reflects that the overriding purpose of the 2008 amendment was to alter the legal precedent established" in Bennett . Novak , 195 P.3d at 1122. Considered in this context, the 2008 amendment is best understood as a specific legislative response to the Bennett decision. Thus, the legislative history cuts against Miller's suggested interpretation.
¶ 31 Next, looking at the overall structure of the statutory offer statute further supports the proposition that the 2008 amendatory language was not intended to reach as far as Miller urges. See Dist. Court , 713 P.2d at 921 (When interpreting a statute, "[t]o reasonably effectuate the legislative intent, [the] statute must be read and considered as a whole."). Indeed, it is evident from another subsection of 13-17-202 that when the legislature intends to effect a change to how a prevailing plaintiff's judgment for comparison purposes is calculated, it knows how to accomplish this end explicitly. Specifically, section 13-17-202(2) provides as follows: "When comparing the amount of any offer of settlement to the amount of a final judgment actually awarded , any amount of the final judgment representing interest subsequent to the date of the offer in settlement shall not be considered." (Emphasis added.) Language akin to the italicized clause in section 13-17-202(2) is conspicuously absent from the 2008 amendatory language. See Well Augmentation Subdistrict of Cent. Colo. Water Conservancy Dist. v. City of Aurora , 221 P.3d 399, 419 (Colo. 2009) ("When the General Assembly includes a provision in one section of a statute, but excludes the same provision from another section, we presume that the General Assembly did so purposefully."); Williams v. Dep't of Pub. Safety , 2015 COA 180, ¶ 31, 369 P.3d 760 ("[W]hen the [General Assembly] includes a provision in one statute, but omits that provision from another similar statute, the omission is evidence of its intent." (quoting Deutsch v. Kalcevic , 140 P.3d 340, 342 (Colo. App. 2006) )). The absence of such language in section 13-17-202(1)(a)(II) further supports the proposition that the reach of the 2008 amendment is more limited than Miller contends.
¶ 32 Based upon the statutory language, legislative history, and overall structure of the statute, we conclude that the 2008 amendment entitles a prevailing plaintiff to recover pre-offer costs if he or she prevails at trial, but it has no bearing on how a final judgment is compared to a statutory settlement offer. In other words, we conclude that the 2008 amendment to *828 section 13-17-202(1)(a)(II) abrogated Bennett , but nothing more.[5]
¶ 33 Our resolution of this question of statutory interpretation does not, however, end our inquiry into whether the trial court nevertheless erred when it compared Miller's final judgment to Hancock's offers. To resolve that issue, we need to look at the language used in Hancock's offers and the trial court's treatment of those offers, which is where we turn next.
2. The Trial Court Erroneously Excluded Miller's Pre-Offer Costs From the Amount of His Final Judgment for the Purpose of Comparison
¶ 34 "The purpose of section 13-17-202 is to encourage the settlement of litigation by encouraging reasonable settlement offers by all parties." Strunk v. Goldberg , 258 P.3d 334, 336 (Colo. App. 2011) (citing Centric-Jones Co. v. Hufnagel , 848 P.2d 942, 946-47 (Colo. 1993) ). "The statute imposes a sanction on a party who rejects a reasonable offer of settlement and obtains a final judgment worth less than the amount offered." Id. (citing Lawry v. Palm , 192 P.3d 550, 565-66 (Colo. App. 2008) ). The longstanding rule governing comparison of statutory offers with a judgment is that, "[i]n determining whether the judgment obtained by plaintiff is greater than the offer of settlement made by defendant, the judgment and offer must be considered in a like manner ." Rubio v. Farris , 51 P.3d 992, 994 (Colo. App. 2002) (emphasis added); see also, e.g. , Novak , 195 P.3d at 1121 (applying Rubio and concluding that because defendant's "offer did not reference, much less explicitly include, costs, ... we perceive no reason why [defendant's] offer, and, consequently, the 'judgment,' must be interpreted to include costs"); Chartier v. Weinland Homes, Inc. , 25 P.3d 1279, 1283 (Colo. App. 2001) ("[I]n calculating whether a final judgment exceeds the amount of a settlement offer that did not specifically exclude costs, a trial court is to exclude post-offer attorney fees awarded as costs, but include pre-offer fees awarded as costs.").[6] In other words, it's an apples-to-apples comparison.
¶ 35 We interpret the meaning of a statutory offer of settlement de novo, applying ordinary principles of contract interpretation. See Bumbal v. Smith , 165 P.3d 844, 845 (Colo. App. 2007).
¶ 36 We now turn to the language that Hancock used in each of her offers. Hancock's first offer provided: "Defendant[,] pursuant to C.R.S. § 13-17-202 [,] offers SEVEN THOUSAND DOLLARS ($7,000) to settle all issues in the above matter." (Emphasis added.) Similarly, the offer she extended two years later provided: "Defendant[,] pursuant to C.R.S. § 13-17-202 [,] offers TWELVE THOUSAND DOLLARS ($12,000) to settle all issues in the above matter." (Emphasis added.)
¶ 37 The trial court relied on Ferrellgas, Inc. v. Yeiser , 247 P.3d 1022, 1030 (Colo. 2011), in concluding that because "[n]either of the settlement offers contained or mentioned the word 'costs,' " "[t]he Court will not, therefore, include [Miller's] costs in determining whether plaintiff's judgment against Hancock exceeded either of Hancock's offers of settlement." In doing so, the trial court read Ferrellgas to require that an offer contain the word "costs" for costs to be included for comparison purposes. We do not read Ferrellgas as imposing such a talismanic requirement.
¶ 38 In Ferrellgas , the supreme court granted certiorari to address three questions: (1) whether a defendant is entitled to a postjudgment setoff for the full value of a resolved *829 subrogation claim; (2) whether a plaintiff's final verdict for comparison purposes under section 13-17-202 must include the setoff; and (3) how pre-offer prejudgment interest should be calculated under such circumstances. Id. at 1026 n.2 (setting forth the three questions presented). The treatment of litigation costs under section 13-17-202 was not squarely before the court. In the course of holding that "a settlement offer should be presumed to impliedly include the amount of any post-verdict subrogation setoff," the supreme court did contrast litigation costs with post-verdict subrogation setoff, noting that unlike a post-verdict subrogation setoff, litigation costs are not presumptively included in a defendant's statutory offer. Id. at 1030 (citing Novak ). But we do not read Ferrellgas as announcing a new rule for considering pre-offer costs for comparison purposes or upsetting the rule articulated in Rubio . Id. (characterizing the rule from Rubio as a "narrow and sensible proposition").[7] At most, Ferrellgas stands for the proposition that costs are presumptively excluded. Id. But whether they are included or excluded still turns on the language used in the offer.
¶ 39 We now turn to the question of whether Hancock's offers included costs. We conclude that they did and that they did so unambiguously. Both offers were extended to settle "all issues." "All issues" is capacious in scope. Indeed, " '[a]ll' is an unambiguous term and means the whole of, the whole number or sum of, or every member or individual component of, and is synonymous with 'every' and 'each.' " Bumbal , 165 P.3d at 845 (quoting Colo. Dep't of Revenue v. Woodmen of the World , 919 P.2d 806, 814 (Colo. 1996) ). Similarly, "issues" is a broad term that reaches beyond just damages, claims, or causes of action. To require the offer to say "all issues including costs " in order to encompass costs would impose a requirement of redundancy. Simply put, Hancock would have been hard pressed to use broader language or to more clearly convey that acceptance of either of her offers would bring the litigation to a close with nothing left to resolve, including costs. Thus, we conclude that "all issues" clearly and unambiguously included costs.
¶ 40 To conclude otherwise would mean that Miller could have accepted either offer and then sought to recover his pre-offer costs on top of the sum indicated in the offer. See Carpentier v. Berg , 829 P.2d 507, 510 (Colo. App. 1992) (a plaintiff who accepted a statutory offer that specified the offer was "exclusive of any costs of this action" was entitled to recover her accrued costs in addition to the amount specified in the offer). After all, that would be the logical (and fair) consequence of reading Hancock's offers to exclude costs. But of course Hancock foreclosed that option by making it clear in both of her offers that the sum indicated included settlement of "all issues." During oral argument, Hancock's counsel admitted as much, acknowledging that if Miller had accepted either of Hancock's offers, he could not have also requested his then-accrued costs on top of the sum included in the offer. That position *830 is perfectly reasonable in light of the capacious language in the offers. But it also forecloses the position that, once rejected, Hancock's offers should be interpreted to exclude costs.
¶ 41 This argument, if taken to its logical conclusion, would have the interpretation accorded to a statutory offer depend on whether the offer is accepted or rejected. If the offer is accepted it includes costs, but if it's rejected it excludes costs. But a statutory offer of settlement is not Schrödinger's cat.[8] It cannot both simultaneously include and exclude pre-offer costs, with its nature dependent on whether it's accepted or rejected. Instead, it is immutably one or the other. And which it is does not depend on whether it's accepted or rejected; it depends on the language used in the offer.
¶ 42 This understanding comports with the overall purpose of the statutory scheme, which is "to encourage the settlement of litigation by increasing the cost of proceeding with a lawsuit after the opposing party has made a reasonable settlement offer." Taylor v. Clark , 883 P.2d 569, 570 (Colo. App. 1994). But "[t]he effectiveness of the statute is based on the ability of parties accurately to assess the value of their claims at issue and compare that value with a settlement offer ." Id. at 571 (emphasis added); see also Centric-Jones Co. , 848 P.2d at 947 ("Both sides are required to assess carefully any offer of judgment.") And if a defendant, through artful drafting, can craft an offer that includes costs if accepted but excludes them if rejected, the ability of a plaintiff to accurately assess an offer is frustrated. For the statute to work effectively and achieve its purpose, a plaintiff needs to know whether an offer includes or excludes costs when deciding whether to accept or reject the offer, and the answer to that inquiry can't depend on whether the offer is accepted or rejected. Instead, it's assessed at the time the offer is made.
¶ 43 In summary, whether a statutory offer includes pre-offer costs turns on the language of the offer. Even against the headwinds of a presumption in favor of excluding pre-offer costs, we conclude that Hancock's use of the phrase "to settle all issues" unambiguously included costs. Because both of Hancock's offers included costs, Miller was entitled to have his pre-offer costs included in his final judgment for the purpose of determining whether either of Hancock's offers entitled her to recover her post-offer costs pursuant to section 13-17-202. Thus, the trial court erred by interpreting Hancock's offers to exclude costs. But whether this error was harmless turns, at least in part, on whether the trial court erred in its calculation of Miller's recoverable costs, which is where we turn next.
C. The Trial Court Erred by Reducing Miller's Recoverable Costs Without Determining Their Reasonableness and Necessity
¶ 44 Miller contends that the trial court erroneously disallowed the majority of his claimed costs. We conclude, based on our review of the record, that the trial court abused its discretion in reducing the amount of Miller's recoverable costs without adequate findings as to their reasonableness and necessity.
¶ 45 We review an award of costs for an abuse of discretion and will disturb the award only if it is manifestly arbitrary, unreasonable, *831 or unfair. Archer v. Farmer Bros. Co. , 90 P.3d 228, 230 (Colo. 2004) ; see also Steele , 78 P.3d at 1128 ("Whether to award expert witness fees and the amount, if any, to be awarded are matters within the sound discretion of the trial court, whose ruling will not be reversed on appeal absent a clear abuse of discretion.").
¶ 46 A trial court's award of costs must be supported by findings that, considered together with the record, are sufficient to permit a reviewing court to determine the basis for the award. Foster v. Phillips , 6 P.3d 791, 796 (Colo. App. 1999) (citing Van Steenhouse v. Jacor Broad. of Colo., Inc. , 935 P.2d 49 (Colo. App. 1996) ). The trial court's findings must include an explanation of whether and which costs are deemed reasonable. Fenton v. Fibreboard Corp. , 827 P.2d 564, 569 (Colo. App. 1991), aff'd in part and rev'd in part , 845 P.2d 1168 (Colo. 1993).
¶ 47 Miller sought $29,699.52 in total costs, separated into eight categories. His motion for costs in the trial court was accompanied by a two-part exhibit that included the underlying invoices. Part one of Miller's exhibit included forty-eight pages of invoices for e-filing fees. Part two included fifty-one pages of invoices for the other seven categories of costs. Aragon filed objections to seven categories of Miller's costs. Miller's response to Aragon's objections described, among other things, the work the experts performed and their billing rates. Miller also attached affidavits from his experts attesting to the nature and extent of their work on the case. Miller's response further noted that neither defendant raised any objection to his claimed court reporter fees. Miller's claimed costs and the amount ultimately awarded, along with Aragon's objections and the trial court's rationale for awarding or denying the costs, are set forth below.
Claimed Trial Court Category (Awarded) Aragon's Objection Disposition and Rationale "The statute does not $1234.50 allow the recovery of E-Filing ($1234) each and every court Recoverable filing fee incurred, just the docket fee." "The claimed courier $136.27 fees were unnecessary Courier ($136) and not incurred Recoverable pursuant to any Court Order."
*832 "The sole recoverable service of process fee is Reduced for the $55.00 the plaintiff unnecessary Service of $788.60 incurred to have this rush service fee Process ($697) defendant served with ($91) the summons and complaint." Court $3486.27 No objection Not addressed Reporter ($0) "Since the mediation was not Court-Ordered, Denied - $685.00 and since the plaintiff is Parties not Mediation ($0) not the `prevailing ordered to party,' the mediation fee mediate is not recoverable." "This Court will note Denied - No that none of the `expert page numbers Expert $21,181.67 witness fees' claimed by for receipts; and Witness ($0) the plaintiff were failed to incurred for this jury demonstrate trial, which took place that each fee in July of 2015." was reasonably necessary "Because the plaintiff failed to introduce his Document medical records as Denied - No and $2101.44 exhibits at trial, any page numbers Exhibit ($0) costs he may have for receipts Production incurred obtaining them are not recoverable per the cost statute."
*833 "Finally, plaintiff's claimed `parking' expenses seem more like ordinary course of Denied - No Misc. $85.77 business expenses, and page numbers ($0) not necessarily incurred for receipts; and for the trial, such as the receipts non-testifying witness's disorganized alleged `parking' expenses." $29,699.52 Total ($2067)
¶ 48 The trial court, in a combined order ruling on both Miller's and Hancock's requests for costs, summarily denied several categories of Miller's claimed costs, including $21,181.67 in expert witness expenses. The trial court denied Miller's document and exhibit production expenses without addressing their reasonableness or necessity. The trial court denied all of Miller's expert witness expenses because "[n]o reference was made to any page number in the attached exhibits where the supporting documentation could be found," and because "plaintiff has failed to demonstrate that each of the expert fees was reasonably necessary for the development of the case in light of the facts known to counsel at the time they were taken." The trial court did not address at all Miller's claimed court reporter costs, and it excluded them entirely from its costs award without explanation. Altogether, the trial court denied $27,632.52, or roughly 93%, of Miller's claimed costs.
¶ 49 We conclude that the trial court abused its discretion by disallowing expert costs, court reporter costs, and document and exhibit production costs without making adequate findings concerning the reasonableness or necessity of the denied costs. Because the trial court failed to make findings sufficient to disclose the basis for its decision to award some costs while denying others, we cannot adequately assess the propriety of the award. Brody v. Hellman , 167 P.3d 192, 206 (Colo. App. 2007) ; see also Fed. Ins. Co. v. Ferrellgas, Inc. , 961 P.2d 511, 515 (Colo. App. 1997) (vacating partial costs award and remanding for findings on reasonableness and necessity sufficient to permit appellate review).
¶ 50 Furthermore, the trial court's denial of the entire amount of Miller's expert witness expenses in particular contrasts unfavorably with its disparate treatment of Hancock's request for costs. The record shows that Miller and Hancock documented their respective expert witness fees in substantially the same manner. However, with less than one page of analysis, and with no discussion of reasonableness or necessity, the trial court awarded Hancock all of her claimed costs, including $9093.75 in expert witness expenses.
¶ 51 The trial court provided no adequate explanation for this disparity in its rulings. While the trial court observed that "Plaintiff's Response did not address any of Hancock's costs," Miller does not bear the burden to establish that Hancock's costs were not reasonable. See Brody , 167 P.3d at 206. Rather, the party against whom costs are awarded is "entitled to have the trial court make findings sufficient to disclose the basis for its decision to award costs and to support the amount awarded." Id.
¶ 52 Nor was Miller's supporting documentation so disorganized that it would have been unduly burdensome for the trial court to confirm the amounts claimed against the attachments. The trial court properly observed that "[a] party seeking costs must *834 provide the court with sufficient information and supporting documentation to allow a judge to make a reasoned decision for each cost item presented." Id. But, the record shows that Miller substantiated his request for costs with both a detailed motion and supporting, albeit somewhat disorganized, documentation to verify the costs that were denied.
¶ 53 While the trial court may have determined that Miller's denied costs were unreasonable or unnecessary, that rationale is not reflected in the record. Instead, the court denied entire categories of costs, including Miller's requested expert-related costs, without discussing either the arguments in Miller's motion and response or the attestations of his expert witnesses. Cf. Foster , 6 P.3d at 796 (recognizing that a court's findings on the reasonableness and necessity of costs may be implicit, so long as the court's order does not contain "any unexplained reduction in any cost"). Indeed, for the substantial majority of Miller's denied costs, the trial court relied on grounds other than those that were raised in Aragon's objections.
¶ 54 We may reverse an award of costs if the award is "manifestly arbitrary, unreasonable, or unfair." Archer , 90 P.3d at 230. Here, the trial court's cursory denial of the entire amount of Miller's expert witness costs, which were supported by detailed motions, affidavits, and adequate documentation-while at the same time granting defendant Hancock's expert witness costs in the entire amount claimed and without analysis-was manifestly unfair and arbitrary.
¶ 55 Accordingly, we reverse the trial court's order on costs and remand the case to the trial court for further proceedings on the necessity and reasonableness of Miller's requested costs.
III. Procedure on Remand to Address Hancock's Motion for Costs Pursuant to Section 13-17-202
¶ 56 We think it may be helpful to lay out the procedure that the trial court should follow in addressing Hancock's motion for costs pursuant to section 13-17-202 on remand.
¶ 57 First, the trial court should separately determine Miller's reasonable recoverable costs accrued as of January 10, 2013, and January 16, 2015, the dates of Hancock's statutory offers. Next, the court should calculate two "final judgment" figures: (1) a "2013 final judgment" consisting of the portion of the verdict recoverable against Hancock plus prejudgment interest and recoverable costs taxable against Hancock as of January 10, 2013; and (2) a "2015 final judgment" consisting of the portion of the verdict recoverable against Hancock plus prejudgment interest and recoverable costs taxable against Hancock as of January 16, 2015.
¶ 58 If the 2013 final judgment is less than or equal to $7000, then Miller is only entitled to recover against Hancock his costs and prejudgment interest accrued as of January, 10, 2013, and Hancock is entitled to recover her costs accrued after that date. If, on the other hand, the 2013 final judgment is greater than $7000, then the trial court must perform a similar analysis with respect to the January 2015 offer. Specifically, if the 2015 final judgment is less than or equal to $12,000, then Miller is only entitled to recover against Hancock his costs and prejudgment interest accrued as of January, 16, 2015, and Hancock is entitled to recover her costs accrued after that date.[9]
¶ 59 Finally, if both the 2013 final judgment exceeds $7000 and the 2015 final judgment exceeds $12,000, then Hancock's motion for costs should be denied, and Miller should be awarded his costs pursuant to section 13-16-104 and prejudgment interest pursuant to section 13-21-101, C.R.S. 2017.
IV. Conclusion
¶ 60 We affirm the trial court's order denying Miller's motion for a new trial on damages, but we reverse the trial court's awards of costs to Hancock against Miller and to Miller against both defendants. We remand to the trial court for further proceedings *835 to determine, consistent with this opinion, the amount of costs Miller is entitled to recover, and whether, after determining Miller's costs, Hancock made a settlement offer pursuant to section 13-17-202 that exceeds the amount of Miller's final judgment, inclusive of pre-offer costs and interest.
JUDGE GRAHAM and JUDGE J. JONES concur.

In analyzing each of the offers, the court included prejudgment interest that had accrued to the date of the respective offer. No party takes issue with that part of the trial court's analysis. See § 13-17-202(2), C.R.S. 2017.

Aragon does not appeal the denial of her costs, and this opinion does not disturb that ruling.

The offers were made between January 2013 and January 2015.

The language of section 13-16-104, C.R.S. 2017, is the same now as when the division in Bennett considered it.

Although we are not persuaded by Miller's argument regarding the reach of the amendatory language in section 13-17-202(1)(a)(II), even our more limited reading of that section reveals an error by the trial court in its application. Specifically, not only did the trial court fail to include Miller's pre-offer costs in his judgment for comparison purposes, it failed to award those costs at all, notwithstanding the fact that he was the prevailing party pursuant to section 13-16-104, C.R.S. 2017. Accordingly, at a minimum, the trial court erred in denying Miller his pre-offer costs.

Because we concluded in Part II.B.1 above that the 2008 amendment did not effect a change with respect to how to compare an offer to a prevailing plaintiff's final judgment, we can look to pre-2008 case law when interpreting section 13-17-202 in this regard.

Admittedly, Ferrellgas, Inc. v. Yeiser , 247 P.3d 1022 (Colo. 2011), is somewhat confusing with respect to the treatment of litigation costs when comparing a prevailing plaintiff's final judgment to a defendant's offer. Three things from the opinion are clear, however: (1) the supreme court noted that when an offer explicitly includes costs, pre-offer costs should be included in the plaintiff's final judgment for comparison purposes, id. at 1030 ("[I]f a settlement offeror strategically chooses to include costs in his offer, it is only fair for the trial court to include those costs when determining whether accepting the settlement would have proven a more cost-effective and efficient option than proceeding to trial."); (2) the defendant's offer in Ferrellgas did contain the language "inclusive of costs," id. at 1025 ("Several months prior to trial, Ferrellgas made Yeiser a settlement offer of $197,000 inclusive of costs and interest, which Yeiser did not accept.") (emphasis added); and (3) notwithstanding the first two points, in its remand instructions to the trial court, the supreme court did not direct the trial court to include the plaintiff's pre-offer costs on remand, id. at 1030-31. Thus, it does not appear that the supreme court actually applied the rule it articulated. Perhaps this anomaly is best explained by the fact that the issue of how costs should be treated for comparison purposes was not included within the scope of any of the three questions it granted certiorari to address. See id. at 1026 n.2. Or perhaps it was simply an oversight. In any event, this anomaly highlights that Ferrellgas 's discussion of the treatment of pre-offer costs for comparison purposes may best be understood as dictum. See People v. Vigil , 127 P.3d 916, 934 (Colo. 2006) (Statements in cases are dicta when "they were not essential to the holdings of the cases.").

Erwin Schrödinger (1887-1961), a Viennese physicist instrumental in the early development of quantum mechanics, posed what has become known as the Schrödinger Cat Paradox. In this thought experiment, Schrödinger placed a cat inside of a box which contained an apparatus which would kill the cat fifty percent (50%) of the time and then, without opening the box, he pondered whether the cat was alive or dead. Schrödinger[ ] proposed that, until he actually opened the box, the cat was neither alive nor dead, but rather existed in "wave form" and in both states, alive and dead, simultaneously.
Hardin Cty. Sch. v. Foster , 40 S.W.3d 865, 872 n.6 (Ky. 2001) (Keller, J., dissenting) (citing E. Schrödinger, Die gegenwärtige Situation in der Quantenmechanik [The Present Situation in Quantum Mechanics] , 23 Naturwissenschaften 807, 807-12, 823, 844-49 (1935), translated in John D. Trimmer, The Present Situation in Quantum Mechanics: A Translation of Schrödinger's "Cat Paradox" Paper , 124 Proceedings of the American Philosophical Society 323-38 (1980)).

All of the amounts discussed in this paragraph are in addition to the $4012 verdict against Hancock and in favor of Miller.