The UNIVERSITY OF KENTUCKY
and Jack C. Blanton, Movants,

v.

COURIER–JOURNAL & LOUISVILLE
TIMES COMPANY; Richard Wilson;
Eric Manuel; Scripps Howard, Inc.,
d/b/a the Kentucky Post; Lexington
Herald–Leader Company, Respondents.

No. 91–SC–000034–DG.

Supreme Court of Kentucky.

April 9, 1992.

Rehearing Denied June 25, 1992.

court held that a portion of a report to the National Collegiate Athletic Association ("NCAA") prepared at the direction of and signed by the President of the University of Kentucky (the "University") was subject to public disclosure under the Act while other portions of the report were exempt. The Court of Appeals reversed the decision of the trial court, holding that the entire Response of the University was a public record which is not exempt from public disclosure under the Act. We affirm.

## I. *Facts and Procedural History*

The NCAA is a voluntary unincorporated association comprised of colleges and universities, conferences and affiliated members which regulates the athletic programs of the majority of four year universities and colleges in the United States. The University is a member of the NCAA.

On July 22, 1988, Dr. David Roselle, then the President of the University, received a letter from S. David Berst, Assistant Executive Director of Enforcement for the NCAA. The letter contained an "official inquiry" from the NCAA regarding alleged rules violations by the University. This inquiry contained factual allegations concerning the involvement of members of the University of Kentucky athletic staff in sending a package containing One Thousand Dollars ($1,000.00) in cash to a basketball recruit in Los Angeles, California. The University released the letter and "official inquiry" to the press.

On October 13, 1988, the University received a "supplemental official inquiry" from the NCAA charging the University with a number of other rules violations. A redacted copy of the letter from the NCAA and a summary of the NCAA's allegations were released to the public.[1] Because the University had not released the entire "supplemental official inquiry," the Louisville *Courier Journal* filed an open records request pursuant to the Act with the University and requested that it release the entire complaint. The University refused to disclose the complaint and the *Courier*

John Darsie, Darsie & Elsie, Paul C. Van Booven, College of Law, University of Kentucky, Lexington, for movants.

Stephen L. Barker, Ogden, Sturgil & Welch, Lexington, George H. Gangwere, John J. Kitchin, Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, Mo., for amicus curiae The Nat. Collegiate Athletic Ass'n.

Jon L. Fleischaker, Kimberly K. Greene, William H. Hollander, Wyatt, Tarrant & Combs, Louisville, for respondent Courier–Journal and Louisville Times Co.

Edward E. Dove, Lexington, for respondent Eric Manuel.

Richard G. Meyer, Deters, Benzinger & LaVelle, P.S.C., Covington, for respondent Scripps Howard, Inc., d/b/a The Kentucky Post.

Thomas W. Miller, Miller, Griffin & Marks, Lexington, for respondent Lexington Herald–Leader Co.

R. BURL McCOY, Special Justice.

This case involves interpretation of the Kentucky Open Records Act, KRS 61.870, *et seq.* (hereinafter "the Act"). The trial

---

1. The report omitted the names of several individuals.

*Journal* and University initiated the instant action by filing a joint petition for declaration of rights in the Fayette Circuit Court. The Lexington Herald–Leader Co. and Scripps Howard, Inc., d/b/a *The Kentucky Post,* both intervened as Plaintiffs seeking access to the NCAA complaint. Eric Manuel, a basketball player for the University, also intervened to prevent disclosure of his academic records.

On December 8, 1988, the Fayette Circuit Court entered a judgment which granted the Plaintiffs access to the bulk of the NCAA complaint. None of the parties appealed the trial court's decision, and the NCAA's "supplemental official inquiry" was released.

University President Roselle then initiated an investigation into the allegations contained in the "official inquiry" and "supplemental official inquiry." As part of this investigation, the University retained a private law firm which it paid over Four Hundred Thousand Dollars ($400,000.00) to conduct interviews and to prepare an official response on behalf of the University to the NCAA's allegations ("the Response").

The Response was ultimately signed by President Roselle on behalf of the University and submitted to the NCAA. In addition to responding to the allegations propounded by the NCAA, the Response incorporated transcripts of interviews and a number of documents gathered during the University's investigation. In order to resolve the dispute regarding public disclosure of this Response, the parties herein filed an amended joint petition for declaratory judgment and asked the trial court to determine whether the Act required disclosure of the Response.

In analyzing whether or not the Response should be disclosed, the trial court divided the Response into three (3) parts "for the purpose of easy reference." Part One contains the University's admission or denial of each NCAA allegation, Part Two contains information supplied by the University under the heading "Summary of Evidence Supporting Response," and Part Three is a compilation of the evidence gathered by the University in support of its Response.

The trial court described in detail the contents of the Response as follows:

Following each one of the 18 allegations of rules violations by the NCAA is the provision "please indicate whether this information is substantially correct and whether the institution believes a violation of NCAA legislation occurred." The 18 separate answers of the University to the above requirement immediately following the heading of "Response" will be considered Part One of the Response. In the opinion of this Court, Part One of the Response represents a decision of the President of the University of sufficient finality to require it to be disclosed to the public at this time. These answers are not part of the investigation of the University but rather came about as a result of the investigation of the University. These answers represent the considered judgment of the Chief Executive of the University and must be regarded as a "final action" within the meaning of the statute.

Immediately following each answer referred to as Part One, under the heading of "Summary of Evidence Supporting Response," is a detailed explanation of the basis for the answer given. This part of the Response will be referred to as Part Two. Parts One and Two of this Response comprise Volume I of the Response, consisting of about 500 pages.

Part Two of the Response contains summaries of the evidence collected during the investigation together with the evaluation of the University's counsel as to the significance of the evidence and the credibility of certain witnesses. It contains an evaluation of various documents including correspondence with private individuals and reports from other agencies. It makes reference to the opinions and recommendations of staff for procedural changes and improvements. This part of the Response clearly comes within the exceptions provided by KRS 61.878(1)(g) and (1)(h) and should not be disclosed at this time. The Court further finds that no meaningful separa-

tion of excepted and non-excepted information could be accomplished.

The rest of the Response will be referred to as Part Three and comprises seven volumes of approximately 3,500 pages. This part of the Response is a compilation of all the evidence gathered by the University during the course of its investigation. These volumes contain copies of depositions, copies of the statements of witnesses, summaries of interviews with witnesses and various documents, correspondence and reports. All of these things are indexed and collated for easy reference and in Part Two specific references are made to items contained in Part Three.

Trial court opinion, pp. 2–3. It then ordered that Part One of the Response be disclosed because it constituted "the considered judgment of the chief executive of the University and must be regarded as a 'final action' within the meaning of the statute." The trial court held that Parts Two and Three of the Response should not be released to the public because it concluded that the University's report was not final and premature release might prejudice the integrity of the investigation to the detriment of the University.

The *Courier–Journal* filed a motion to reconsider, asking the court to clarify whether or not the Response would cease to be preliminary after the NCAA concluded its investigation. While this motion was pending, the NCAA issued a final decision regarding the allegations against the University and imposed penalties upon the University for rules violations. The trial court denied this motion and its opinion and order became final.

All of the newspaper Plaintiffs appealed the trial court's decision. The Court of Appeals concluded that Parts Two and Three of the Response were part of the University's official response to the NCAA and were not subject to any exemption from disclosure under the Act. For the reasons set forth below, we affirm that decision.

## III. DISCUSSION

The University contends that (1) the Court of Appeals erred in determining the applicability of the records exemptions without reviewing the documents at issue; (2) that Parts Two and Three of the University's Response were exempt from disclosure under the Act; and, (3) that the doctrine of self-critical analysis makes the Response privileged at common law and exempt from the disclosure requirements of the Act. We will address these arguments in the order in which they were presented by the University.

## A. REVIEW OF PARTS TWO AND THREE OF THE RESPONSE BY THE COURT OF APPEALS

As noted by the Court of Appeals, Part Two and Three of the Response are not part of the record on appeal. However, the trial court made detailed factual findings regarding the contents of the Response and no party to the appeal disputes or appealed those findings. Therefore, it must be presumed, that the trial court's findings as to the contents of Parts Two and Three are supported by the evidence. *See Reid v. Reid*, Ky., 300 S.W.2d 225 (1957); *Porter v. Harper*, Ky., 477 S.W.2d 778, 779 (1972).

The Court of Appeals did not disregard the factual findings of the trial court. It accepted the factual findings of the trial court and then determined that the trial court had erred as a matter of law in classifying Parts Two and Three of the Response as exempt. The Court of Appeals adopted the trial court's findings rather than substituting its own judgment and the University's claim to the contrary is without merit.

## B. THE UNIVERSITY'S ENTIRE RESPONSE IS SUBJECT TO DISCLOSURE UNDER THE KENTUCKY OPEN RECORDS ACT

KRS 61.872 provides that "all public records shall be open for inspection by any person, except as otherwise provided by KRS 61.870 to 61.884 ..." The Act defines a "public record" as:

[A]ll books, papers, maps, photographs, cards, tapes, discs, diskettes, recordings or other documentary materials regardless of physical form or characteristics, which are prepared, owned, used, in possession of or retained by a public agency.

KRS 61.870(2). It is clear that the University is a "public agency" and that the entire Response submitted by the University to the NCAA constitutes a public record.

The General Assembly created certain exemptions to disclosure under the Act. However, it placed the burden on public agencies to prove that a public record is exempt from disclosure and stated that the exemptions to public disclosure "shall be strictly construed even though such examination may cause inconvenience or embarrassment to public officials or others." KRS 61.882(4). The University contends that Parts Two and Three of the Response are exempt from disclosure under KRS 61.878(1)(a), (f), (g), and (h). Those subsections exempt from public disclosure:

(a) Public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy;

.    .    .    .    .

(f) Records of law enforcement agencies or agencies involved in administrative adjudication that were compiled in the process of detecting and investigating statutory or regulatory violations if the disclosure of the information would harm the agency by revealing the identity of informants not otherwise known or by premature release of information to be used in a prospective law enforcement action or administrative adjudication. Unless exempted by other provision of KRS 61.870 to 61.884, public records exempted under this provision shall be open after enforcement action is completed or a decision is made to take no action. Provided, however, that the exemptions provided by this subsection shall not be

used by the custodian of the records to delay or impede the exercise of rights granted by KRS 61.872 and 61.884;

.    .    .    .    .

(g) preliminary drafts, notes, correspondence with private individuals, other than correspondence which is intended to give notice of final action of a public agency;

(h) preliminary recommendations, and preliminary memoranda in which opinions are expressed or policies formulated or recommended.

■  KRS 61.878(1)(a) does not exempt the Response from disclosure. We held in *McCall v. Courier Journal and Louisville Times Co.*, Ky., 623 S.W.2d 882, 887 (1981), *cert. denied*, 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982), that the "right of privacy does not prohibit any publication of a matter which is of public or general interest." The Response represents a legitimate inquiry into the operation of an agency of the Commonwealth. One of the purposes of the Act is to allow the public to scrutinize the action of such agencies. The University spent over $400,000.00 for the Response and the public has a legitimate interest in its contents. The contents of the Response are a matter of public interest and release would not constitute a clearly unwarranted invasion of personal privacy. Consequently, the Response is not exempt under KRS 61.878(1)(a).

■  The exemption set forth in KRS 61.878(1)(f), is also inapplicable. This exemption applies only to law enforcement agencies or agencies involved in administrative adjudication. The University cannot seriously contend that it is a law enforcement agency. Moreover, the University itself conceded that the NCAA, a private regulatory entity, is the only "agency" involved in "administrative adjudication." Therefore, KRS 61.878(1)(f) would not apply. Furthermore, the exemption does not apply after enforcement action is completed or a decision is made to take no action."[2]

2.  Additionally, the University's claim that disclosure of the Response should be prohibited because it would hinder "the agency's investigatory powers," by making witnesses less willing to

cooperate is without legal basis. Concededly, in *Berst v. Chipman,* 232 Kan. 180, 653 P.2d 107 (1982), the Kansas Supreme Court protected portions of NCAA files at issue in a libel action

■ The University's argument that the requested materials are exempt under KRS 61.878(1)(g) and (h) is also without merit. These subsections exempt only documents which are preliminary in nature. The Response signed by the University's president and submitted to the NCAA constituted the final result of an extensive investigation. The *entire* Response was submitted to the NCAA by the University and there is no rational basis for the trial court's decision that parts of the Response were subject to disclosure while other parts were exempt. The Response was merely divided into parts by the trial court for the purpose of "easy reference." This does not and cannot change the undisputed fact that the entire report was submitted to the NCAA and that the portions of the Response referred to by the trial court collectively constitute the University's Response.

■ The fact that the Response was submitted prior to final action by the NCAA is irrelevant. The only agency subject to the provisions of the Act is the University. The submission of the report to the NCAA by the University constitutes final action of the University, an agency subject to the disclosure requirements contained in the Act. Further, investigative materials that were once preliminary in nature lose their exempt status once they are adopted by the agency as part of its action. *See, e.g., City of Louisville v. Courier Journal and Louisville Times*, Ky.App., 637 S.W.2d 658 (1982) and *Kentucky State Board of Medical Licensure v. Courier Journal and Louisville Times Co.*, Ky.App., 663 S.W.2d 953 (1983).

We agree with the Court of Appeals that once the University made full and complete disclosure of the materials contained in the Response to the NCAA, it subjected these documents to full disclosure once the University's action became final. The documents sought by the Appellees are not

from discovery on the ground that confidentiality enhances the NCAA's investigating process. This, however, is not Kansas and the NCAA and the University's preference for confidentiality in investigating rules violations cannot supersede the clear mandate of the Act.

protected from disclosure by the exemptions of subsections (1)(g) and (1)(h).

## C. SELF–CRITICAL ANALYSIS

■ The University asks the Court to adopt a "self-critical analysis" privilege which would exempt from disclosure self-evaluative documents. We refuse to judicially adopt such a privilege.

■ First and foremost, as we held in *Northern Kentucky Port Authority, Inc. v. Cornett*, Ky., 700 S.W.2d 392 (1985), once the common law is codified by statute, the common law is no longer enforced. Any common law regarding access to records maintained by public agencies was codified and preempted by the General Assembly's passage of the Act.[3]

■ Secondly, the University itself concedes that even those courts which recognize the self-critical analysis privilege apply the privilege in the context of discovery in civil cases, and not in the context of disclosure of public records. Finally, even if a self-critical analysis privilege did exist, the University waived the privilege by releasing the Response to the NCAA, a private entity.

## CONCLUSION

The entire Response submitted to the NCAA by the University constitutes a public record and the University has not sustained its burden of establishing that its Response falls within the scope of any statutorily recognized exemption. Consequently, the decision of the Court of Appeals is affirmed and the University is hereby ordered to disclose the entire Response.

COMBS, LAMBERT, LEIBSON, and WINTERSHEIMER, JJ., concur.

REYNOLDS, J., concurs in result.

**3.** The General Assembly has determined that any exceptions to disclosure in the Act "shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others." KRS 61.-882(4).

379

SPAIN, J., dissents and would affirm the trial court.