RENDERED: MARCH 25, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

### 2019-SC-0468-DG

UNIVERSITY OF KENTUCKY                                                                      APPELLANT

ON REVIEW FROM COURT OF APPEALS
v.                                NO. 2017-CA-0394
FAYETTE CIRCUIT COURT NO. 16-CI-03229

THE KERNEL PRESS, INC., D/B/A                                                      APPELLEE
THE KENTUCKY KERNEL

**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>AFFIRMING</u>**

In 2015 two University of Kentucky graduate students complained of sexual assaults by Dr. James Harwood, a professor in the University's College of Agriculture. The University investigated the allegations, assembled an investigative file and prepared a final investigative report detailing its findings. In February 2016, the University reached a separation agreement with Harwood who left the University with certain continuing financial benefits and with tenure intact. Having received information regarding the foregoing events, The Kernel, the University's student-run newspaper, filed two Open Records Act (ORA) requests pursuant to Kentucky Revised Statutes (KRS) 61.870-.884 seeking disclosure of various documents, including all documents pertaining to the University's investigation of Harwood. Although the University provided some personnel records and a copy of Harwood's resignation letter and

separation agreement, a second request for the investigative file was denied. The Kernel requested review by the Attorney General pursuant to KRS 61.880(2), and the Attorney General, after considering the University's legal memorandum, ordered the University to disclose the records with appropriate redactions. The University declined and sought judicial review.

Presented with the University's arguments and The Kernel's response, the Fayette Circuit Court conducted an *in camera* examination of the investigative file maintained by the University and concluded that the entire file was protected as "education records" under the Family Education Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g. The Court of Appeals reversed the trial court's order, finding that the University failed in the first instance to comply with its statutory obligations under the ORA and, when challenged, failed to meet its burden of showing that the requested records are exempt from disclosure. On discretionary review, we too find that the University failed to comply with its obligations under the ORA and that the trial court clearly erred in finding the entire investigative file exempt from disclosure. For these reasons more fully explained below, we affirm the Court of Appeals and remand this case to the trial court for further proceedings in accord with the ORA and this Opinion.

**FACTS AND PROCEDURAL HISTORY**

In the summer of 2015 the University received complaints from two female graduate students (Jane Doe 1 and Jane Doe 2)[1] concerning allegations of sexual assault committed by Dr. James Harwood, a tenured professor in the College of Agriculture. These instances of alleged misconduct occurred at off-campus conferences related to the graduate students' field of study. As required by Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681-1688 (Title IX), the University's Office of Institutional Equity and Equal Opportunity (EEO) launched an investigation of the allegations. EEO informed the two graduate students that the University would do its best to ensure their anonymity. Jane Doe 1 and Jane Doe 2 were further assured that only Harwood and those in the University with a legitimate need to know would be made aware of their complaints. The EEO also informed witnesses that the University would take steps to protect their privacy and to protect against disclosure of personally identifiable information to the public at large.

In the course of its investigation, the EEO assembled an investigative file containing the investigative report; letters from the EEO to specific parties concerning the allegations and final outcome of the investigation; letters written by the EEO concerning the status of developments in the case; emails from the EEO to the two graduate students and other witnesses; the EEO's

---

[1] The two graduate students have filed an amici brief as "amici curiae Jane Doe 1 and Jane Doe 2." We adopt their terminology in this Opinion and in some instances refer to them collectively as "the graduate students" or "the Jane Does."

interview notes; documents supplied by students and witnesses, including the Jane Does; and documents supplied by Harwood. The 470-page investigative file contains student-specific information, including explicit details of the alleged misconduct, witnesses' names and initials, phone numbers, email addresses, home addresses, travel plans, research projects, photographs, text messages, medical information about a party's family member, information about the parties' personal lives, and details about relationships and interactions among people in the relevant department at the College of Agriculture.

In a final investigative report, the EEO concluded that sufficient evidence existed to support a finding that Harwood assaulted and harassed both graduate students. After the EEO relayed its findings to Harwood, he resigned prior to final adjudication. The University and Harwood reached a separation agreement on February 26, 2016 that provided that the University would not initiate proceedings to revoke Harwood's tenure; Harwood would continue to receive his salary with benefits until August 31, 2016, or until he found employment elsewhere if that occurred earlier; and Harwood and his family would continue to receive health benefits from the University through December 31, 2016, or the date Harwood started his new job, whichever came first. Realizing that Harwood could deny the allegations, leave the University quietly and seek academic employment elsewhere, Jane Doe 1 and Jane Doe 2 wanted to remedy a perceived flaw in the Title IX reporting and investigation process by drawing attention to the matter.

The Jane Does reached out to The Kernel through an intermediary, with the goal of exposing Harwood so that his misconduct would not remain hidden. On March 21, 2016, The Kernel submitted the following ORA request to the University:

> I am requesting an opportunity to obtain copies of all records detailing Dr. James D. Harwood's resignation amid accusations of sexual assault. This request includes but is not limited to: the Title IX complaints filed by the two female students, any reprimands and any commendations, Harwood's personnel file, and any documents detailing the University of Kentucky's investigation into allegations of sexual assault, sexual harassment, or allegations of alcohol abuse committed by Harwood.

In response, the University provided the student newspaper with records from its Human Resources Department and personnel records from the Department of Agriculture with redactions and omissions of sensitive personal information. The University also provided The Kernel with copies of Harwood's separation agreement and resignation letter, confirming the University had indeed investigated and addressed the two graduate students' allegations. However, the University declined to produce any other documents because it deemed them "preliminary records," a broad category that encompassed handwritten notes, correspondence and memoranda; records covered by the attorney-client privilege; and/or records containing personally identifiable student information claimed to be protected by FERPA, 20 U.S.C. § 1232g, and its regulations.[2]

---

[2] The first sentence of the University's ORA response erroneously labeled the request improper: "Your request for ". . . all records . . ." is improper under the Open Records Act." To be clear, The Kernel's request was not improper. ORA requests routinely seek "all documents pertaining to [subject matter]." The responsibility for identifying responsive records and any applicable exception lies with the receiving public agency, not the requester.

None of these withheld documents were specifically identified in the University's single-paragraph response.

On April 7, 2016, The Kernel again requested copies of all records detailing the University's investigation of Harwood. The University again refused in a single-paragraph response, reasoning that The Kernel's requests were for preliminary records which are exempt from disclosure. KRS 61.878(1)(i) and (j). The University also claimed some documents are protected pursuant to KRS 61.878(1)(a) because they contain personal information, and other documents are protected by Kentucky Rule of Evidence (KRE) 503 because they are considered attorney-client privilege/work product material. Notably, the University did not detail the specific contents of the investigative file nor did it invoke FERPA, which it had previously mentioned, or other federal laws which it would later raise as grounds for nondisclosure.

The Kernel appealed the matter to the Attorney General pursuant to KRS 61.880(2). On May 26, 2016, the Office of the Attorney General sent the University a letter with inquiries regarding its refusal to disclose the records, requesting a general description of how the University investigates sexual harassment/sexual assault claims against tenured professors, and what challenges the University believed impeded its ability to redact personally identifiable information. The Attorney General also requested copies of various documents, including the documents already disclosed to The Kernel and the documents the University refused to disclose so the basis for nondisclosure could be substantiated. KRS 61.880(2)(c). In response, the University raised

6

new arguments in a 36-page memorandum but refused the Attorney General's request for copies of both the disputed and undisputed records. Again, the University failed to delineate the withheld documents. The Attorney General later noted that the University did not directly or, in some cases, even indirectly, address that office's inquiries.

On August 1, 2016, the Attorney General rendered a decision in favor of The Kernel. *In Re: Kentucky Kernel/University of Kentucky*, Ky. Op. Atty. Gen. 16-ORD-161 (Aug. 1, 2016). The Attorney General held that the University failed to meet its burden of proof in denying The Kernel's request. The Attorney General directed the University to "make immediate provision for [The Kernel's] inspection and copying of the disputed records, with the exception of the names and personal identifiers of the complainant and witnesses . . ." per KRS 61.878(1)(a).

Pursuant to KRS 61.882 the University sought review of the Attorney General's decision in the Fayette Circuit Court, arguing that the documents withheld from The Kernel are exempt from disclosure under the ORA. The Attorney General intervened in the action to seek a declaration of rights on the issue of the Attorney General's authority to require government agencies to submit to the Attorney General for *in camera* review those documents withheld from ORA requests.[3]

---

[3] The Attorney General's authority to require government agencies to submit documents withheld from ORA requests for substantiation purposes through *in camera* review was an issue at the trial court and also addressed in the Court of Appeals' opinion. The Attorney General is not a party to this appeal and that issue is not before us. We note, however, that the appellate court generally upheld the

On November 17, 2016, the Jane Does filed an amici brief before the trial court asserting a position that aligned with the University's. They stated that what began as The Kernel's journalistic search for information had evolved into a public dispute that ignores their interests, noting that The Kernel had published 28 articles about Harwood's misconduct between April and November 2016 despite their requests to stop. They explained that each article forces them to relive the trauma they suffered and that the confidentiality offered to the two graduate students during the EEO's investigation of Harwood was integral to their decision to come forward and report the incidents. The Jane Does feared that releasing the investigative file documents to The Kernel, even with redaction, would allow the public to quickly deduce their identities.

On January 23, 2017, the Fayette Circuit Court entered an order reversing the Attorney General's order. The trial court determined that two of the exceptions to the ORA were relevant to the documents in question: KRS 61.878(1)(a), which excludes the disclosure of "[p]ublic records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy . . ." and KRS

---

Attorney General's right to *in camera* review, observing: "The [ORA] does not confer subpoena power on the AG. Perhaps the General Assembly assumed state agencies would comply with such requests to further the interest in transparency. If that was the assumption, the University has proven it wrong." *Kernel Press, Inc. v. University of Kentucky*, 2017-CA-000394-MR, 2019 WL 2236421, at *10 (Ky. App. May 17, 2019). The Court of Appeals recognized one valid exception to the University's obligation to submit withheld documents for review by the Attorney General, namely FERPA-protected "education records with *unredacted* personally identifying information the University is *prohibited* from releasing" pursuant to 20 U.S.C. § 1232g(b)(1)(c) and 34 Code of Federal Regulations (C.F.R.) § 99.31(a)(3) and (9). *Id.* at *11.

61.878(1)(k), which excludes the disclosure of "[a]ll public records or information the disclosure of which is prohibited by federal law or regulation . . . ." By virtue of this second exclusion, FERPA, a federal law that controls the use and disclosure of student education records, is incorporated into the ORA's list of exemptions. 20 U.S.C. § 1232g. Under FERPA, no federal funds can be provided to an educational institution that releases education records or personally identifiable information without the appropriate consent. 20 U.S.C. § 1232g(b)(1). An education record is defined as a record that is "directly related" to a student. 20 U.S.C. § 1232g(a)(4)(A)(i).

After conducting an *in camera* review of the investigative file, the trial court determined that the documents are "educational records" pursuant to FERPA. The trial court was persuaded by the holding in *Rhea v. District Board of Trustees,* 109 So. 3d 851, 858 (Fla. Dist. Ct. App. 2013), which adopted a broad construction of "directly related." 20 U.S.C. § 1232g(a)(4)(A)(i). The Florida District Court concluded that "directly related" is not a "primarily related" test and that a record can relate directly to both a student and a teacher. *Rhea,* 109 So. 3d at 857-58.

In its analysis, the trial court first found that the investigative file relates to a former University professor but also to the two graduate students. Some documents describe their perceptions of the alleged events and the subsequent investigation. The file also contains documents with information about classes, area of study, and matters specifically related to the educational experiences of Jane Doe 1 and Jane Doe 2. Focusing on references to students, the trial court

9

concluded that the various documents at issue are educational records pursuant to FERPA.

The trial court further ruled that given the nature of the documents in the investigative file, coupled with the nature of the facts underlying the investigation, even disclosure of redacted documents would not offer adequate protection:

> The record at issue is thoroughly interwoven with explicit details of the alleged sexual assault and other facts submitted by parties and witnesses. Although the record also contains information such as names, addresses, and phone numbers, which could reasonably be redacted, the record is so extensively laced with details of the alleged assault that redaction alone would not protect these complaining witnesses. Further, [the] size of the graduate program from which these allegations stem is small; the pool of female graduate students in this program is even smaller. When also factoring in that both allegations originated at specific dates and at specific off-campus conferences, the possible identity of a complaining witness becomes even easier to pinpoint. For instance, it would be simple for one to deduce the identities of the complaining witnesses by requesting financial records from the off-campus conferences. Analyzing the totality of the specifics [sic] facts at hand, if the records are turned over, even in (redacted form), the identities of the complaining witnesses will be known within reasonable certainty.

The trial court reversed the Attorney General's decision, leaving The Kernel with no access to any part of the investigative file.

Two weeks following a hearing on the matter and one day after the trial court entered its January 23, 2017 order, the University for the first time prepared and submitted an index of the "Harwood Investigative File." The University apparently did so only because it was directed to by the trial court. The index, filed over nine months after The Kernel made its first ORA request,

10

includes bullet points with brief descriptions of the contents of each of the ten sections of the investigative file. Examples of document descriptions include "[e]mail correspondence between Complainant 1 and Harwood regarding Harwood's alleged sexual misconduct"; "social media post from the event at which Complainant 2 alleges Harwood's sexual misconduct occurred"; and "Alexander notes from meeting with Student A." The index also listed the number of pages in each section of the investigative file. Within each section of the index the University claimed all material was exempt, listing **the very same seven** exemptions for each section and thus every document in the investigative file:

> The records indexed under this tab are exempt in whole or in part pursuant to FERPA, [the Violence Against Women Act], [the Jeanne] Clery [Disclosure of Campus Security Policy and Campus Crime Statistics Act], and/or the U.S. Constitution consistent with KRS 61.878(l)(k). The records are further exempt in whole or in part pursuant to KRS 61.878(1)(a), (i) and/or (j) as preliminary records and/or records for which disclosure would create an unwarranted invasion of personal privacy.

While most of the documents in the investigative file are Martha Alexander's[4] notes and correspondence from communicating with and interviewing the two graduate students and witnesses, the file also contains other documents such as the University's policies on harassment and sexual assault, Harwood's curriculum vitae, and excerpts from the user manual of a camera owned by one of the two graduate students.

---

[4] Martha Alexander, the University's Title IX Deputy Compliance Officer, was eventually the author of the three Final Determination Letters–individual letters addressed to Harwood, Jane Doe 1 and Jane Doe 2.

Based on the newly-provided index, The Kernel filed a motion to alter, amend or vacate the trial court's order insofar as it concluded that every part of the Harwood Investigative File was protected from disclosure and no part of the file could be redacted so as to protect the Jane Does' identities. The trial court denied the motion but made its January 23, 2017 order final and appealable. As noted, The Kernel appealed to the Court of Appeals where it received a very different ruling.

The Court of Appeals held that the trial court's finding that all records were exempt from disclosure was not supported by substantial evidence. The University failed to explain how specific exemptions applied to particular records, thereby failing to fulfill its statutory ORA responsibilities under KRS 61.880(1), which requires an agency to state the "specific exception authorizing withholding of the record." Quoting *Kentucky New Era, Inc. v. City of Hopkinsville,* 415 S.W.3d 76, 88 (Ky. 2013), the Court of Appeals held the ORA does not permit "the nondisclosure of an entire record or file on the ground that some part of the record or file is exempt[.]" The Court of Appeals emphasized that the University belatedly filed a deficient index of the withheld records and did not even attempt to comply with the ORA in any meaningful way. The appellate court also concluded that the trial court made an erroneous factual finding that all the records in the investigative file are covered by FERPA. The Court of Appeals remanded the case to the trial court for the University (1) to separate nonexempt records from records claimed exempt, (2) to redact personally identifying information from exempt records,

12

and (3) to the extent possible without disclosing exempt information, state with exactness why any withheld record is exempt from disclosure.[5]

Having granted discretionary review, heard oral arguments and carefully considered the record, we affirm the Court of Appeals. We also take this opportunity to reiterate the ORA obligations of a state agency, statutory obligations that were ignored or minimized by the University at every step in this case.

## ANALYSIS

The crux of this case is the interaction of Kentucky's ORA, a statutory scheme that allows public access to records maintained by public agencies such as the University, and FERPA, a federal statute that prohibits the disclosure of a student's educational records without their consent. The trial court made a factual finding that the entire Harwood Investigative File constituted "educational records" under FERPA, and after further concluding that redaction could not adequately protect the two graduate students' privacy rights, deemed all documents within the file totally exempt from disclosure. We review a trial court's factual finding in these circumstances for clear error. *New Era,* 415 S.W.3d at 78. Here, the trial court clearly erred.

### I. The Open Records Act and Public Agency Obligations

---

[5] The appellate court also observed that although The Kernel had not requested the statutorily-authorized costs and attorney fees or penalties, "if requested upon remand and upon a finding that the University willfully violated the [ORA], those amounts may be awarded." *Kernel Press*, 2019 WL 2236421, at *11.

13

The ORA, KRS 61.870-.884, was enacted in 1976 to give the public access to public records in the possession of a public agency, such as the University. KRS 61.871 states the General Assembly's intent as follows:

> The General Assembly finds and declares that the basic policy of KRS 61.870 to 61.884 is that free and open examination of public records is in the public interest and the exceptions provided for by KRS 61.878 or otherwise provided by law shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others.

The ORA generally favors disclosure. *See Ky. Bd. of Exam'rs of Psychologists v. Courier–Journal*, 826 S.W.2d 324 (1992). However, the right to examine public records is not absolute and KRS 61.878(1) provides fourteen categories of public records that are "excluded from the application of KRS 61.870 to 61.844," including:

> (a) Public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy;
>
> . . . .
>
> (i) Preliminary drafts, notes, correspondence with private individuals, other than correspondence which is intended to give notice of final action of a public agency;
>
> (j) Preliminary recommendations, and preliminary memoranda in which opinions are expressed or policies formulated or recommended;
>
> (k) All public records or information the disclosure of which is prohibited by federal law or regulation[.]

As noted, the General Assembly has expressly declared that these exceptions "shall be strictly construed." KRS 61.871. A public agency can deny an ORA request based on one or more of the statutory exceptions but the agency's

14

obligation in those circumstances is clear: "An agency response denying, in whole or in part, inspection of any record shall include a statement of the specific exception authorizing the withholding of the record and a brief explanation of how the exception applies to the record withheld." KRS 61.880. "The agency's explanation must be detailed enough to permit the court to assess its claim and the opposing party to challenge it." *New Era*, 415 S.W.3d at 81. Moreover, "[t]he public agency that is the subject of an Open Records request has the burden of proving that the document sought fits within an exception to the Open Records Act." *Hardin Cty. Sch. v. Foster,* 40 S.W.3d 865, 868 (Ky. 2001).

The Kernel requested the Harwood Investigative File, in part, to understand how the University handled the students' complaints and the investigation. The Kernel contends that the University's actions prior to entering into the separation agreement with Harwood should be made public. The public's right to know how effectively public institutions perform their taxpayer-funded functions is unquestionably central to the ORA.

> The public's "right to know" under the Open Records Act is premised upon the public's right to expect its agencies properly to execute their statutory functions. In general, inspection of records may reveal whether the public servants are indeed serving the public, and the policy of disclosure provides impetus for an agency steadfastly to pursue the public good.

*Bd. of Exam'rs,* 826 S.W.2d at 328.

Here, two students at a state-funded university alleged they were sexually assaulted by a professor, a public employee, who committed the acts at work-related conferences. The public interest in how promptly, thoroughly

15

and effectively the University responded to those serious allegations is manifest but that does not translate into automatic disclosure of all requested documents. While the ORA favors disclosure, "the policy of disclosure is purposed to subserve the public interest, not to satisfy the public's curiosity . . . ." *Id.* The University maintains that the public interest has been served in this case, the "public already knows all it needs to know" and further disclosures would invade the Jane Does' privacy rights. The Kernel responds that it has no interest in revealing the two students' identities or harming them in any way. Rather, The Kernel's primary objective is to understand how the University handled the complaints, investigated the claims and protected the two graduate students as well as any other individuals at the University. In this vein, the newspaper contends the public has a strong interest in the investigatory methods used by a public university in cases such as this generally and in determining specifically whether the University complied in this case with any applicable state and federal laws, including Title IX.[6]

Competing interests are at the core of every ORA case and judicial resolution–the eventual balancing of those interests within the parameters laid out by the legislature–is only achieved when the public agency complies fully

---

[6] Amici curiae Kentucky Press Association, Student Press Law Center, Society of Professional Journalists, Reporters Committee for Freedom of the Press, and News Leaders Association have submitted a brief emphasizing accountability and discussing the nationwide interest in similar cases which often become known through newspaper coverage following open records requests. They pointedly note that other state universities–including Eastern Kentucky University, Murray State University, Northern Kentucky University and the University of Louisville–have released records exactly like those at issue here, redacted as appropriate, with no adverse consequences under FERPA.

16

with its statutory obligations and this Court's precedent. In *City of Fort Thomas v. Cincinnati Enquirer,* 406 S.W.3d 842, 852 (Ky. 2013), we rejected the proposition that a public agency could invoke a statutory exemption to clothe an entire investigative file with protection from disclosure, thereby avoiding a document-by-document review and detailed response to the ORA requester. Although that case involved a different ORA exemption than those at issue in this case, it merits consideration as we address the University's one-paragraph, four-sentence response to The Kernel's request for an investigative file that was ultimately determined to contain 470 pages of documents of varying types.

In *City of Fort Thomas, id.* at 846, the Cincinnati Enquirer newspaper made an ORA request to the City of Fort Thomas seeking to inspect and copy the entire police file generated during a high-profile homicide investigation. At the time, the defendant had been convicted and waived her right to appeal but she had not yet been sentenced. *Id.* The City denied the request, claiming the exemption to disclosure of records in KRS 61.878(1)(h), which excludes "records of law enforcement agencies . . . that were compiled in the process of detecting and investigating statutory . . . violations if the disclosure of the information would harm the agency . . . by premature release of information used in a prospective law enforcement action." *Id.* at 846-47. The circuit court ruled in favor of the City, but the Court of Appeals remanded for a more particularized consideration of the documents in the police file, rejecting the City's blanket rationale for nondisclosure. *Id.* at 847.

Similarly, this Court held that a police department's investigatory file is not categorically exempt from disclosure under the ORA merely because it pertains to a prospective enforcement action.[7] *Id.* at 849. Rather, the agency must articulate a factual basis for applying an exemption, explaining how the release poses a risk of harm to the agency in a prospective action. *Id.* at 851. The agency is not required to justify nondisclosure on a line-by-line or even document-by-document basis. *Id.* With respect to voluminous requests, "it is enough if the agency identifies the particular kinds of records it holds and explains how the release of each assertedly exempt category would harm the agency in a prospective enforcement action." *Id.* Notably, the police file at issue in *City of Fort Thomas* was estimated to consist of thirty boxes of documents.

While *City of Fort Thomas* involved a different ORA exemption, the Court's holding is nonetheless instructive as we review what occurred in this case. The University responded to The Kernel's second ORA request, the April 7, 2016 request, with one paragraph:

> RESPONSE: Please be advised that all records detailing the above-referenced investigation from the University's Office of Institutional Equity and Equal Opportunity are unable to be released pursuant to KRS 61[.]878(1)(i) and (j). These records are considered preliminary drafts, notes, correspondence with private individuals, other than correspondence which is intended to give notice of a final action of a public agency; or preliminary recommendations, and preliminary memoranda in which opinions are expressed or policies formulated or recommended and are exempt from

---

[7] The City reasoned that while the defendant's conviction was final and nonappealable, a collateral attack pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42 remained prospectively available.

18

disclosure. Additionally, some documents in the file are protected pursuant to KRS 61.878(1)(a), as they contain information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy. Finally, some documents are protected pursuant to the Kentucky Rules of Evidence 503, as they are considered attorney-client/work product privileged and are exempt from disclosure.

No effort was made to itemize the contents of the Harwood Investigative File or even to identify "the particular kinds of records it holds," *id.*, and, curiously, the University seemingly abandoned any reliance on FERPA or other federal statutes it would later raise as grounds for nondisclosure. When The Kernel sought review by the Attorney General, the University provided a legal memorandum outlining its Title IX obligations and its position on several ORA exemptions as well as FERPA and other federal statutes, but it still offered no description of the various documents in the 470-page investigative file and how they individually or by category qualified for an exemption. Indeed, an index of the contents of the Harwood Investigative File was not forthcoming until after the circuit court had ruled that the file did not have to be disclosed and only then at that court's direction. Even then while the index listed and categorized the documents in the investigative file, the same boilerplate, multiple-grounds exception, quoted above, was claimed for every single document in the file. Simply put, this is **not** how the ORA process works.

The University's initial, single-paragraph assertion of a blanket exemption to disclosure of the entire Harwood Investigative File was wholly insufficient. While a line-by-line or document-by-document explanation is not necessarily required in every case, in this particular case the University had

only 470 pages to identify/categorize with an explanation of how a particular exemption or exemptions justified withholding the particular document or category of documents. Later, at the direction of the trial court, the University finally offered specific document descriptions, identifying for example, "email correspondence between Complainant 1, Student A and Harwood regarding the night Complainant 1 alleges sexual misconduct occurred"; "social media post from the event at which Complainant 2 alleges Harwood's sexual misconduct occurred"; and "Final Investigative Report." The obligation to obtain this level of response from the public agency is not the trial court's, but rather the agency's obligation in the first instance, a statutory obligation. Here the entire file was treated as a single record, like the investigative file in *City of Fort Thomas,* a "record" that the University maintained and would neither delineate nor produce. We reiterate that a public agency has the obligation to prove that requested documents fit within an exception to the ORA. *Foster,* 40 S.W.3d at 868. Under Kentucky law, the University's response to The Kernel's request was required to be "detailed enough to permit the court to assess its claim and the opposing party to challenge it." *New Era,* 415 S.W.3d at 81. The University failed to meet this requirement.

In essence, the University treated the Harwood Investigative File as if it were one giant record, unable to be separated or compartmentalized when in fact the investigative file is a 470-page collection of various types of records. Grouping all the documents together as one record to avoid production is patently unacceptable under the ORA. KRS 61.878(4) specifically requires that

20

"[i]f any public record contains material which is not excepted under this section, the public agency shall separate the excepted and make the nonexcepted material available for examination." Because the investigative file likely contains documents that are excepted under the ORA and documents that are not, the University's duty, as a public agency, was to separate excepted and nonexcepted documents. For each document the University claims can be properly withheld from production pursuant to the ORA, the University had the burden to prove that the document fits within an exception by identifying the specific ORA exception and explaining how it applies. KRS 61.880. The boilerplate paragraph–this but if not this then that–used for every withheld document was wholly unacceptable. With those principles in mind and the overall inadequacies of the University's ORA response identified, we turn to the various bases for the University's refusal to produce any part of the Harwood Investigative File.

## II. The Family Educational Rights and Privacy Act (FERPA)

Although not cited in its initial April 11, 2016 response to The Kernel's second ORA request, the University eventually relied primarily on FERPA, 20 U.S.C. § 1232g, to defend its refusal to disclose the Harwood Investigative File. The trial court erroneously accepted this federal statute as a basis for nondisclosure of the entire contents of the file under KRS 61.878(1)(k), the ORA exception "for records or information the disclosure of which is prohibited by federal law or regulation."

21

FERPA, a funding statute, imposes conditions on the availability of federal funds to educational institutions and controls the use and disclosure of students' education records. "Congress enacted FERPA under its spending power to condition the receipt of federal funds on certain requirements relating to the access and disclosure of student educational records." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 278 (2002). Because FERPA is a federal law regarding access to documents, it is incorporated into the list of exemptions in the ORA, which includes public records the disclosure of which is prohibited by federal law. KRS 61.878(1)(k). FERPA provides, in pertinent part, that

> [n]o funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein . . .) of students without the written consent of their parents to any individual, agency or organization . . . .

20 U.S.C. § 1232g(b)(1).

FERPA defines an education record:

(4)(A) For the purposes of this section, the term "education records" means, except as may be provided otherwise in subparagraph (B), those records, files, documents, and other materials which—

> (i) contain information directly related to a student; and

> (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.

20 U.S.C. § 1232g(a)(4)(A)(i)(ii).

While the definition of "education record" in the statute and its accompanying regulations is broad, courts have generally defined education records as documents with information about academic performance, financial

22

aid, or disciplinary matters.[8]  Additionally, the U.S. Department of Education

website recites the statutory definition of "education record" and then provides:

"These records include but are not limited to grades, transcripts, class lists,

student course schedules, health records (at the K-12 level), student financial

information (at the postsecondary level), and student discipline files."[9]  Records

relating to a particular student but also involving other individuals have

received different treatment.  Most courts have concluded that records relating

to employee misconduct do not constitute student educational records because

they directly relate to the activities and behaviors of employees,[10] although at

least one court has determined that education records can directly relate to a

student and teacher simultaneously.[11]  In *Ragusa v. Malverne Union Free*

---

[8] *See U.S. v. Miami Univ.,* 294 F.3d 797 (6th Cir. 2002) (affirming a lower court's ruling that university disciplinary records are education records under FERPA); *Dahmer v. W. Ky. Univ.,* 2019 WL 1781770, at *3 (W.D. Ky. Apr. 23, 2019) (holding that records related to student complaints of sexual discrimination and Title IX investigations are not "educational records" that FERPA seeks to protect from disclosure); *Bauer v. Kincaid,* 759 F. Supp. 575, 591 (W.D. Mo. 1991) (holding that criminal investigation and incident reports are not educational records because they are unrelated to the type of records which FERPA expressly protects, i.e. records relating to academic performance, financial aid, or scholastic probation which are kept in individual student files).

[9] U.S. Dept. of Educ., *What is an education record?* https://studentprivacy.ed.gov/faq/what-education-record (last visited Mar. 19, 2021).

[10] *See Briggs v. Bd. of Trs. Columbus State Cmty. Coll.,* 2009 WL 2047899, at *1 (S.D. Ohio 2009) (holding that records relating directly to school employees and only indirectly to students are not education records under FERPA); *Wallace v. Cranbrook Educ. Comm.,* 2006 WL 2796135, at *4 (E.D. Mich. 2006) (holding that documents related to alleged sexual misconduct of a teacher toward students were not education records because they did not directly relate to students); *Ellis v. Cleveland Mun. Sch. Dist.,* 309 F. Supp. 2d 1019, 1024 (N.D. Ohio 2004) (holding that FERPA protects educationally-related information, not records directly related to an alleged incident of harassment by a teacher).

[11] *See Rhea v. Dist. Bd. of Trs. of Santa Fe Coll.,* 109 So. 3d 851, 858 (Fla. Dist. Ct. App. 2013) (holding that if a record directly relates to a student, it is irrelevant

23

*School District,* 549 F. Supp. 2d 288, 293 (E.D.N.Y. 2008), the court held that even where a document qualifies as an "education record," FERPA does not prohibit an institution from releasing that record if "all personally identifiable information [is] redacted." (Quoting *U.S. v. Miami Univ.,* 294 F.3d at 824).[12] Redaction of FERPA-protected education records is commonplace.[13]

The FERPA "education record" exclusion was clearly not intended as an "invisibility cloak" that can be used to shield any document that involves or is associated in some way with a student, the approach taken by the University in this case. We are persuaded that "education record" should be narrowly

---

whether it is also related to a teacher under FERPA). The professor in *Rhea* was given a redacted copy of a student's email complaining about his conduct. The Court addressed the professor's request for an unredacted copy, so he could know the student's identity.

[12] In *Ragusa,* 549 F. Supp. 2d at 293, a high school math teacher denied tenure filed an employment discrimination action and sought to compel production of records pertaining to grades and evaluations regarding academic performance and behavior given to all students in the mathematics department. The Court determined that while the records were undoubtedly education records as defined by FERPA, redacted versions of the documents could be produced because nothing in FERPA prohibits disclosure of education records with no personally identifiable information. *Id.* Further, FERPA permits an educational institution to disclose education records to comply with a judicial order. *Id.*

[13] *See Osborn v. Bd. of Regents of Univ. of Wis. Sys.*, 647 N.W.2d 158, 168 (Wis. 2002) (holding that the University must redact records, where necessary, to comply with an open records request for records of applicants); *State ex rel The Miami Student v. Miami Univ.*, 680 N.E.2d 956, 959 (Ohio 1997) (holding that in producing disciplinary records, the University may properly redact student names, social security numbers, student identification numbers, and date and time of the incident); *Unincorporated Operating Div. of Newspapers, Inc. v. Trs. of Ind. Univ.*, 787 N.E.2d 893, 908-09 (Ind. Ct. App. 2003) (holding that "Although FERPA contains no redaction provision, neither does it prohibit such." The appellate court instructed the trial court upon remand to review materials and redact or separate any portion of the documents which might contain personally identifiable information in violation of FERPA.); *Doe v. Rollins Coll.*, 2019 WL 11703979 at *5 (M.D. Fla.) (ordering that records be produced in redacted form because FERPA does not prohibit the release of records so long as a student's personally identifiable information is redacted).

24

construed, as courts generally have when considering its scope, and that even those documents that qualify may still be subject to production in redacted form. As noted, FERPA aims to protect the privacy of student education records and to prohibit educational institutions from disclosing personally identifiable information in those records. FERPA regulations offer guidance for redacting. According to 34 C.F.R. § 99.3, "personally identifiable information" includes, but is not limited to:

(a) The student's name;

(b) The name of the student's parent or other family members;

(c) The address of the student or student's family;

(d) A personal identifier, such as the student's social security number, student number, or biometric record;

(e) Other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name;

(f) Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or

(g) Information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates.

In *Hardin County Schools v. Foster*, 40 S.W.3d 865, 869 (Ky. 2001), a case involving an ORA request for a statistical compilation of student disciplinary records, the Court interpreted the federal regulation defining personally identifiable information to "include information that makes the identity of the student easily traceable, such as a name, address or personal

25

characteristics." The regulation and this Court's reading of it have thus focused on granular information which can be redacted from education records before production pursuant to an ORA request.

Turning to the case before us, it is not this Court's role to review the investigative file at issue and determine which documents, if any, are education records protected by FERPA and therefore arguably exempt from disclosure or, more likely, subject to disclosure after appropriate redactions. However, even a cursory review of the index the University belatedly provided reveals that a considerable number of the documents in the investigative file cannot conceivably relate "directly" to a student, and therefore would not qualify as an education record under FERPA. Some obvious examples of non-qualifying documents include a camera user manual, the University's policies and procedures regarding sexual harassment and assault, and Harwood's curriculum vitae. These documents are manifestly not education records, raising serious questions about the University's decision to wholly deny the open records request for all documents in the investigative file when some documents very clearly have no protection under Kentucky or federal law. As for other documents that **do** specifically mention students, many of those also are not likely education records under the narrow reading of FERPA adopted by most courts.

To reiterate, it was incumbent upon the University in the first instance to specifically claim the FERPA exclusion where legally applicable and to articulate how a given document qualifies as an "education record." Of course,

26

even education records are generally subject to production in redacted form. On remand, the University must fulfill its statutory obligations under the ORA so that The Kernel has sufficient information to challenge any FERPA claims, and the trial court can then rule as to any documents that remain in dispute.

We note that the University argues that the entire investigative file constitutes personally identifiable information and it cannot be redacted because the University reasonably believes that The Kernel knows the two students' identities. The above-quoted FERPA regulation states that personally identifiable information includes "[i]nformation requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates." 34 C.F.R. § 99.3(g). This focus on whether anyone at The Kernel knows the Jane Does' identities is immaterial at this point, however, because the first consideration is which, if any, of the requested documents are in fact FERPA-protected education records. If documents exist that constitute education records, then those records can be redacted to remove personally identifiable information, including information that could lead The Kernel to identifying the Jane Does. To the extent the trial court concludes 34 C.F.R. § 99.3(g) may apply in this case, then some fact finding is in order to determine what impact The Kernel's alleged knowledge of the Jane Does' identities should have on the University's ORA production obligations with regard to documents that qualify as FERPA-protected education records.

27

### III. The KRS 61.878(1)(a) Privacy Exemption

The University argues that regardless of whether the Harwood Investigative File contains education records under FERPA, the Jane Does' constitutional privacy rights still prohibit disclosure of any part of the 470-page file. The University relies on federal caselaw characterizing the intimate details of a sexual assault as falling within an individual's constitutionally-protected right to privacy. *See, e.g., Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998) (involving a sheriff's release of details of a sexual assault on a victim whose identity was already known to the public due to newspaper coverage). Further, the University asserts that while redacting names and basic identifiers is typically sufficient to protect identities, redaction is constitutionally insufficient if disclosure of the remaining information would allow someone to deduce an individual's identity through a skillful internet search.

The ORA contains a privacy exemption, excluding from disclosure "[p]ublic records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy." KRS 61.878(1)(a). To determine whether a record was properly withheld under this exemption, "[w]e must balance the interest in personal privacy the General Assembly meant to protect, on the one hand, against, on the other, the public interest in disclosure." *New Era,* 415 S.W.3d at 82.

In *New Era, id.* at 78, the Kentucky New Era, a newspaper, filed an open records request seeking copies of certain arrest citations and police incident reports from January 1 through August 31, 2009, out of concern that the

28

Hopkinsville Police Department might be responding inconsistently to similar criminal complaints depending upon the neighborhood involved. After proceedings in circuit court, New Era received redacted copies of all requested law enforcement records. The records contained the names of the individuals involved but their social security numbers, driver's license numbers, home addresses and telephone numbers were removed. *Id.* at 80. New Era sought discretionary review for the Court to consider whether the Court of Appeals misapplied the ORA in upholding the city's redactions of the addresses, phone numbers, social security numbers, and driver's license numbers of the victims, witnesses and suspects appearing in the requested police records. *Id.*

In examining the personal privacy interest of the individuals to whom the records pertained, the Court explained that an individual's interest in preventing the dissemination of personal information becomes stronger when the dissemination could subject them to adverse repercussions, such as embarrassment, stigma and reprisal. *Id.* at 83.

> Kentucky private citizens retain more than *de minimis* interest in the confidentiality of the personally identifiable information collected from them by the state. This interest increases as the nature of the information becomes more intimate and sensitive and as the possible consequences of disclosure become more adverse.

*Id.* at 85. Likewise, victims of sexual assault at the hands of a public university professor have more than a *de minimis* interest in the confidentiality of the personally identifiable information they provide to enable the university to investigate the alleged misconduct. While this privacy interest must be

29

recognized and protected, it cannot be the basis for wholesale shielding of public records.

In *New Era*, the Court reasoned that "where the disclosure of certain information about private citizens sheds significant light on an agency's conduct, we have held that the citizen's privacy interest must yield." *Id.* at 86. For cases where the public interest is more attenuated, the disclosure of private information may not be warranted. *Id.* Ultimately the Court concluded that the release of the additional requested information such as the individuals' contact information and social security numbers would "constitute a clearly unwarranted invasion of personal privacy," and therefore the City's redaction of that information did not contravene the ORA. *Id.* at 88.

So, although the public interest in assessing the quality and thoroughness of a publc agency's performance of its duties is always strong, *Board of Examiners,* 826 S.W.2d at 328, courts must also consider whether a record production will result in an unwarranted invasion of privacy. We cannot say that disclosure of some or even all of the Harwood Investigative File would "constitute a clearly unwarranted invasion of personal privacy" because the privacy concerns presented by disclosure can likely be resolved through careful redaction. Kentucky citizens have a strong interest in ensuring that public institutions, including the University, respond appropriately to accusations of sexual harassment by a public employee. To the extent the personal privacy exemption is claimed as to a particular document on remand, the trial court

30

must balance that interest against the strong public interest in knowing how promptly and effectively the University handled this matter.

The Kernel has no objection to and, in fact, requested the redaction of any information that personally identifies the women Harwood sexually assaulted. We agree with the University that protection of the two graduate students' privacy interests will entail redaction of more than simply names and addresses. The Jane Does were two females in a very small, male-dominated program. Revealing information such as their particular area of study, year of graduate work, names of their advisors, or the years or locations of their sexual assault could lead to their identification. On remand, the University should make its specific privacy interest exemption claims as to the specific requested documents and propose redactions. The trial court can then consider whether the resulting document production appropriately balances the public and private interests at stake.

## IV. The KRS 61.878(1)(i) and (j) Preliminary Records Exemptions

Finally, we consider the primary reason the University stated in its April 11, 2016 response as grounds for withholding the entire Harwood Investigative File, i.e., the contents were not subject to disclosure because they were all documents preliminary in nature. The relevant "preliminary records" provisions of the ORA exclude the following from disclosure:

(i) Preliminary drafts, notes, correspondence with private individuals, other than correspondence which is intended to give notice of final action of a public agency;

31

(j) Preliminary recommendations, and preliminary memoranda in which opinions are expressed or policies formulated or recommended[.]

KRS 61.878(1)(i) and (j). The University contends that it took final action on the Jane Does' complaints when it accepted Harwood's resignation and entered into the separation agreement but all records that preceded that event were preliminary in nature and therefore excluded from disclosure. This position reflects a misunderstanding of the relevant ORA exceptions.

In *University of Kentucky v. Courier-Journal & Louisville Times Co.,* 830 S.W.2d 373, 374 (Ky. 1992), the University of Kentucky received a complaint from the National Collegiate Athletic Association (NCAA) regarding alleged rules violations by the University. The University President launched an investigation into the allegations and prepared an official response on behalf of the University which was sent to the NCAA. *Id.* at 375. The response incorporated transcripts of interviews and documents gathered during the investigation. *Id.* When the Courier-Journal sought disclosure of the response, the University raised several exemptions to disclosure in the ORA, including KRS 61.878(1)(i) and (j).[14] *Id.* at 377. This Court reasoned that "[t]he Response signed by the University's president and submitted to the NCAA constituted the final result of an extensive investigation." *Id.* at 378. The Court also held that "investigative materials that were once preliminary in nature lose their exempt

---

[14] The ORA has been amended since the *Courier-Journal* opinion was rendered. At the time of the opinion, these exemptions were contained in KRS 61.878(1)(g) and (h). The language of the exemptions is identical.

status once they are adopted by the agency as part of its action." *Id.*

Therefore, the entire Response was subject to disclosure. *Id.*

Here, the University, through its Office of Institutional Equity and Equal Opportunity, investigated the sexual assault allegations against Harwood and created a "Final Investigative Report" as well as a "Final Determination Letter" sent to Harwood and the Jane Does. The University concedes that it took final action on the two students' complaints when it accepted Harwood's resignation and entered into a separation agreement with him, but it disputes that documents in the investigative file lost their preliminary status when Harwood resigned.

The University correctly points out that nothing in KRS 61.878(1)(i) and (j) states that preliminary materials ever lose their preliminary status yet the Court in *Courier-Journal* created a narrow exception to the plain language of the statute.[15] However, "when the General Assembly revises and reenacts a statute . . . it 'is well aware of the interpretation of the existing statute and has adopted that interpretation unless the new law contains language to the contrary.'" *Ballinger v. Commonwealth,* 459 S.W.3d 349, 354-55 (Ky. 2015) (citing *Butler v. Groce,* 880 S.W.2d 547, 549 (Ky. 1994)). The *Courier-Journal* opinion was rendered in 1992. The General Assembly revised and reenacted the ORA in 1994, 2005, 2013 and 2018. Despite these numerous

---

[15] The position taken by the Court regarding preliminary documents had been adopted by the Court of Appeals years before. *See, e.g., City of Louisville v. Courier-Journal & Louisville Times,* 637 S.W.2d 658 (Ky. App. 1982); *Ky. State Bd. of Med. Licensure v. Courier-Journal & Louisville Times,* 663 S.W.2d 953 (Ky. App. 1983).

33

opportunities to revise the statute to address this Court's interpretation of the preliminary document exceptions in *Courier-Journal,* through each amendment and reenactment, the language of KRS 61.878(1)(i) and (j) has remained exactly the same. Further, the alleged "narrow construction" of the exception adopted in *Courier-Journal* is in accordance with KRS 61.871, which requires that "the exceptions provided for by KRS 61.878 . . . shall be strictly construed. . . ."

Here, even though Harwood resigned prior to a final adjudication by the University, this fact does not render the investigative file a collection of "forever preliminary" documents. In *Palmer v. Driggers,* 60 S.W.3d 591, 594 (Ky. App. 2001), a newspaper filed an ORA request seeking disciplinary records pertaining to local police officers. One of the officers who was the subject of a formal complaint, Palmer, resigned during the disciplinary proceedings with the Owensboro City Commission. *Id.* When the trial court ordered that a redacted copy of the complaint against Palmer be released to the newspaper, Palmer appealed. *Id.* at 594-95. The Court of Appeals held, correctly in our view, that "a resignation from a position by an employee before the Commission has reached a decision concerning possible termination is a 'final action.'" *Id.* at 597.

Like in *Palmer,* the effect of Harwood's resignation was to end the investigation and disciplinary proceedings; his resignation constitutes a final action. These parts of the Harwood Investigative File that were once preliminary in nature lost that exempt status when the University agreed to end the investigation and proceedings by accepting Harwood's resignation and

34

entering into a separation agreement. *Courier-Journal,* 830 S.W.2d at 378. The preliminary document exceptions invoked by the University at one point in these proceedings are thus not applicable and should not be considered on remand.

**CONCLUSION**

The Open Records Act encourages the "free and open examination of public records" even where examination "may cause inconvenience or embarrassment to public officials or others." KRS 61.871. The University may find The Kernel's ORA requests burdensome and intrusive or even ill-advised but the University is not authorized to decide what public records must be disclosed and what records can lawfully be withheld. Those decisions are ultimately for the courts within the parameters of the ORA, and to facilitate those decisions the University must first fulfill its obligations to the public under the statute and this Court's ORA precedent. We trust that the University will do so on remand and the trial court can proceed to a proper resolution of this unnecessarily protracted open records action. Accordingly, we affirm the Court of Appeals and remand this matter to Fayette Circuit Court for further proceedings consistent with this Opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Joshua Michael Salsburey
Bryan Howard Beauman
Donald Callaway Morgan
Sturgill, Turner, Barker & Moloney, PLLC

William E. Thro
General Counsel
University of Kentucky

COUNSEL FOR APPELLEE:

Thomas Walcutt Miller
Elizabeth Catesby Woodford
Miller, Griffin & Marks, PSC

COUNSEL FOR AMICI CURIAE,
JANE DOE 1 AND JANE DOE 2:

Melissa Foster Bird
Megan Basham Davis
Nelson Mullins Riley & Scarborough LLP

COUNSEL FOR AMICI CURIAE,
EASTERN KENTUCKY UNIVERSITY,
KENTUCKY COMMUNITY & TECHNICAL
COLLEGE SYSTEM, KENTUCKY SCHOOL
BOARDS ASSOCIATION, KENTUCKY STATE
UNIVERSITY, MOREHEAD STATE
UNIVERSITY, MURRAY STATE UNIVERSITY,
NORTHERN KENTUCKY UNIVERSITY,
UNIVERSITY OF LOUISVILLE, AND
WESTERN KENTUCKY UNIVERSITY:

Ena Viteskic Demir
Thomas Neal Kerrick
Kerrick Bachert, PSC

COUNSEL FOR AMICI CURIAE,
THE KENTUCKY PRESS
ASSOCIATION, NEWS LEADERS ASSOCIATION,
REPORTERS COMMITTEE FOR FREEDOM
OF THE PRESS, SOCIETY OF
PROFESSIONAL JOURNALISTS, AND STUDENT
PRESS LAW CENTER:

Michael Patrick Abate
Jon L. Fleischaker
Kaplan Johnson Abate & Bird, LLP